**UNITED STATES of America**

v.

**Santos RIVERA–VENTURA, Defendant.**

**No. 94–CR–1082(JBW).**

United States District Court,
E.D. New York.

May 8, 1995.

Zachary W. Carter, United States Atty. by Kelly Moore, Brooklyn, NY, for Government.

Leonard F. Joy, Legal Aid Society, Fed. Defender Div. E.D.N.Y. by Jason L. Solotaroff, Brooklyn, N.Y., for defendant.

### AMENDED MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge:

## I. INTRODUCTION

Charged with being found in the United States following a previous arrest and deportation, 8 U.S.C. § 1326(a)(2), the defendant moved for dismissal of the indictment on the ground that his prosecution was barred by the five-year statute of limitations. 18 U.S.C. § 3282. The government contended that the defendant committed a continuing offense each day that he remained in the United States. It also asserted that, in any event, the statute of limitations was tolled by the defendant's flight from justice. The government's contentions are persuasive.

## II. FACTS

The defendant entered the United States illegally in September 1986. He was deported within a matter of weeks. Approximately one year later, on October 8, 1987, he was caught by Immigration and Naturalization Service ("INS") agents after crossing from Mexico into Texas hidden in the back of a truck. Deportation proceedings were commenced. No criminal charges were filed at that time. The defendant requested and received a change of venue from Texas to New York for his deportation hearing.

He was released by the INS on bond. The address the defendant gave on his release was false. Hearings were scheduled for February 18, 1988. The defendant failed to appear.

Seven years later, in September of 1994, the defendant was discovered by INS agents when he was arrested for driving while intoxicated. He had been arrested several times previously on drunk driving charges, but each time he had given a false name.

On September 2, 1994, a warrant was issued for defendant's arrest for a violation of 8 U.S.C. § 1326. He was arrested on September 16, 1994 and indicted on October 17, 1994. The indictment reads:

In or about and between October 1987 and September 1994, within the Eastern District of New York and elsewhere, the defendant SANTOS RIVERA–VENTURA, an alien, who had been deported from the United States, was found in the United States without first having obtained the consent of the Attorney General of the United States.

It is undisputed that the defendant failed to seek the required permission from the Attorney General.

## III. LAW

The statute that the defendant is charged with violating, 8 U.S.C. § 1326, criminalizes attempted entry, entry, or being found in the United States following a previous arrest and deportation. It provides:

[A]ny alien who . . . has been arrested and deported or excluded and deported, and

thereafter *enters, attempts to enter, or is at any time found in,* the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act, shall be fined under title 18, United States Code, or imprisoned not more than two years or both.

8 U.S.C. § 1326 (emphasis added). Neither exception (A) nor (B) applies. The language "enters, attempts to enter, or is at any time found" provides on its face for three separate occasions on which the offense may be committed. *See United States v. Whittaker,* 999 F.2d 38, 42 (2d Cir.1993).

A five-year statute of limitations, 18 U.S.C. § 3282, applies to federal criminal statutes that do not contain their own limitations provisions:

> Except as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282. Section 1326 is governed by the five-year limitations period because it does not provide for an alternative.

The parties disagree about whether 8 U.S.C. § 1326 includes a continuing offense. The government submits that it does and the defendant argues that it does not. Each is correct in some sense. As noted above, section 1326 describes three possible violations. The rules governing each violation are not necessarily the same.

The consensus among those circuit courts considering the issue is that the crime of "entering," as provided in 8 U.S.C. § 1326, does not constitute a continuing offense, but the crime of "being found" does. *See, e.g., United States v. Guzman–Bruno,* 27 F.3d 420, 423 (9th Cir.1994) (crime of "being found" constitutes continuing offense); *United States v. Rincon–Jimenez,* 595 F.2d 1192,

1194 (9th Cir.1979) (citing with approval district court cases in which section 1326 was described as containing a continuing offense). *Cf. United States v. Rodriguez,* 26 F.3d 4, 8 (1st Cir.1994) (in considering which edition of the Sentencing Guidelines to apply to violation of section 1326, held that crime of being "found" occurred when defendant was "caught"); *United States v. Whittaker,* 999 F.2d 38, 42 (2d Cir.1993) (Sentencing Guidelines in effect when defendant was "discovered" applies to crime of being "found"); *United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 170, 126 L.Ed.2d 129 (1993).

■ Under this formulation, the crime of "entry" is complete when the defendant enters the United States, while the crime of "being found" is not complete until defendant is discovered by the authorities. *DiSantillo,* 615 F.2d at 137 (crime of "entry" completed when defendant "entered or attempted to enter the United States through an official INS port of entry"; crime of being "found" complete "when his presence is first noted by the immigration authorities"); *see also Guzman–Bruno,* 27 F.3d at 423 (crime of being "found" completed when defendant was "discovered" by INS agents); *Rodriguez,* 26 F.3d at 8 (same).

The Second Circuit court of appeals implicitly accepted the continuing offense formulation for the being "found" violation in *United States v. Whittaker,* 999 F.2d 38, 39 (2d Cir.1993). In *Whittaker* the Guidelines Manual operative at defendant's discovery and apprehension provided for a greater penalty than that in effect when the defendant surreptitiously entered the country. Declaring that the defendant completed the 8 U.S.C. § 1326 violation when he was "found," the court of appeals upheld application of the harsher Guidelines. Under *Whittaker,* a defendant is "found" when his or her "presence is discovered." 999 F.2d at 41; *see id.* at 42 ("[T]he 'found in' provision informs an alien who, following deportation after conviction of a felony ... reenters this country illegally and remains here, that he will be deemed guilty of an offense when he is discovered.").

The question of how to determine when the crime is one of "entry" and when it is one of "being found"—though noted—was not addressed in *Whittaker.* The court accepted the imprecise language in the indictment and the defendant's plea as, in effect, a finding that he had been convicted of both entering and of being found. It wrote:

> The district court summarized to Whittaker the charge against him: that from October 1991 through April 1992, he 'entered and attempted to enter and [was] found' in the United States after having been deported and without [meeting the statutory requirements for reentry following such deportation].... When Whittaker pleaded guilty, it was to the single offense with which he was charged and not just to part of it.

*Id.* at 41. In the court of appeals' view, the fact that Whittaker pled guilty to a charge mentioning three separate violations meant, in effect, that he was guilty of all of them. In affirming use of the Guidelines Manual in effect when Whittaker was found the Court did note that the defendant's entry was surreptitious, *id.* at 42, a factor taken into account by other courts which have ruled directly on the distinction between the two crimes, *see infra.* The indictment in the instant case charges only that the defendant, Santos Rivera–Ventura, "was found" in the United States.

■ The distinction between the "entry" crime and the "found" crime generally turns on whether or not the defendant entered the country surreptitiously—that is to say, in such a way as to prevent the immigration authorities from discovering his or her presence. According to the leading case, *United States v. DiSantillo,* 615 F.2d 128, 137 (3d Cir.1980), the defendant commits the crime of entry when "he [enters] or [attempts] to enter the United States through a port of entry [and] the immigration authorities have a record of when he entered or attempted to enter." The defendant commits the crime of "being found" where "no record is possible because the entry was surreptitious and not through an official port of entry." *Id.; see also Rodriguez,* 26 F.3d at 8 (approving *DiSantillo* formulation); *United States v. Ca-*

*nals–Jimenez,* 943 F.2d 1284, 1287 (11th Cir. 1991) (same). *But see United States v. Ortiz–Villegas,* 49 F.3d 1435, 1436–37 (9th Cir. 1995) (holding that "surreptitious entry is [not] a prerequisite to prosecution for being 'found in'" violation). In its *Whittaker* decision, the Second Circuit court of appeals relied upon *DiSantillo* 's distinction between "entry at a recognized INS port of entry" and "surreptitious crossings" in its own construction of 8 U.S.C. § 1326's use of "found." 999 F.2d at 42.

In *United States v. Gay,* 7 F.3d 200 (11th Cir.1993), the Eleventh Circuit extended its view of the crime of "being found" to include those defendants who enter the country at a recognized port of entry using their own passports but who, due to an INS administrative limitation, elude detection. Previously, in *United States v. Canals–Jimenez,* 943 F.2d 1284 (11th Cir.1991), the appeals court had accepted the *DiSantillo* limitation on the "being found" crime to those who entered the country "surreptitiously." In *Gay,* the defendant was convicted of a crime in 1986, deported in 1987, and then reentered later in 1987 without seeking the proper authorization under section 1326. At the time, the "INS required four to six months to enter a name into [its] lookout system" for detecting illegal entrants. *Gay,* 7 F.3d at 201. Explaining its decision that the defendant was guilty of the crime of "being found," the court stated:

> [W]e conclude that the *Canals* court was merely using surreptitious entry as the most obvious example of an illegal entry which would not be detected by the immigration officials, and after which an alien who had illegally entered might be 'found in' the United States.

*Id.* at 202. These cases suggest that section 1326 should not be construed to reward successful evasion of United States immigration authorities at recognized ports of entry.

■ What if the alien enters surreptitiously, is immediately discovered and released on bond, and then seeks to evade immigration authorities by disappearing? In this event, he or she should be deemed to have made the decision to commit the separate offense of being in the United States illegally through

evasion of the authorities, a crime completed whenever he or she is subsequently "found." This was exactly the position of defendant. He was not "found" until September, 1994; only then did the statute of limitations begin to run.

■ The crime of being found is complete: 1) when the illegal alien turns himself or herself over to appropriate authorities; or 2) when he or she is discovered and held by the authorities; or 3) if, after an encounter with INS officials, the illegal alien's identity and residence are known to those authorities so that the alien is readily available for further legal proceedings which he or she does not evade. Under this analysis, law enforcement officials are held responsible for failure to prosecute the "found" violation only when the defendant has not purposefully prevented them from doing so.

Since construction of the statute as defining a continuing offense is dispositive of the motion, consideration of the tolling of the statute under 18 U.S.C. § 3290 is not required. Nevertheless, because there may be disagreement with the analysis of being found as a continuing offense, the tolling issue is considered below.

■ The tolling statute provides that "[n]o statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290. A person flees from justice when he realizes that there is a high probability that he will be prosecuted for a crime and he hides or absents himself with the intent to frustrate prosecution. *See, e.g., Streep v. United States,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895); *United States v. Catino,* 735 F.2d 718, 722 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). It is not necessary that actual formal prosecution be commenced. *See Streep,* 160 U.S. at 133–34, 16 S.Ct. at 246 ("It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not actually begun.").

## IV. APPLICATION OF LAW TO FACTS

■ On October 8, 1987, the defendant was caught trying to enter the United States illegally. The statute of limitations for the 8 U.S.C. § 1326 "entry" violation began to run on that day.

Four months later defendant failed to appear at a scheduled deportation hearing. On that day he began to commit the crime of being in the country in violation of the 8 U.S.C. § 1326 "found" provision. That crime was committed each day that the defendant remained in the United States until the INS subsequently "found" him. It was completed by his being "discovered" when he was arrested on September 16, 1994 by the INS. The government had from that date until September 16, 1999 to prosecute him for his violation. The indictment, which was issued on October 17, 1994, was well within the statute of limitations period.

It is possible to argue that the defendant was "found" when he was located in the back of a truck in Texas on October 8, 1987 and taken into custody, and not later when he was reintercepted. If so, the statute of limitations would have run out on October 8, 1992—long before he was indicted. Even were that the case, however, the statute would have been tolled while defendant was a fugitive—that is to say from February of 1988 to September of 1994. This tolling would make the indictment in October, 1994 timely.

The defendant's flight was from United States prosecutorial forces—the INS. He could have been criminally charged when he reentered this country illegally in 1987 after having once been deported. That the INS initially decided to deport, rather than prosecute him, does not allow him now to escape the consequences of his six-year flight. The defendant knew that deportation proceedings were scheduled because he requested and received a change of venue for them. Moreover, the defendant had been deported once before and can, therefore, be assumed to have been familiar with such proceedings. The evidence demonstrates that rather than submit to the jurisdiction of the deportation hearing, the defendant concealed himself with "the intent of avoiding arrest." The evidence includes his providing a false address to the INS in connection with the

**452**

deportation hearing; his failure to contact the INS to correct the error; and his use of aliases in connection with his drunk driving offenses. Even if the statute of limitations began running in Texas in 1987, it was tolled during the time he was a fugitive. The statute of limitations, therefore, does not bar his prosecution for being "found."

## V. CONCLUSION

The motion to dismiss the indictment was properly denied.

SO ORDERED.