UNITED STATES of America, Appellee,

v.

Santos Hernan RIVERA–VENTURA, Defendant–Appellant.

No. 219, Docket 95–1134.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1995.

Decided Dec. 19, 1995.

Kelly A. Moore, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, Brooklyn, New York, on the brief), for Appellee.

Philip L. Weinstein, New York City (The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, on the brief), for Defendant–Appellant.

Before KEARSE, WALKER, and CALABRESI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Santos Hernan Rivera–Ventura appeals from a judgment entered in the United States District Court for the Eastern District of New York convicting him, following his conditional plea of guilty before Jack B. Weinstein, *Judge*, of being "found in" the United States after having been deported

and without first obtaining the permission of the United States Attorney General, in violation of 8 U.S.C. § 1326(a) (1994). Indicted on this charge in 1994, Rivera–Ventura sought dismissal of the indictment on the ground that his postdeportation reentry into the United States occurred in 1987 and was contemporaneously known to the government, and that the applicable five-year statute of limitations thus barred the present prosecution. The district court rejected the statute-of-limitations defense on the alternative grounds that (a) violation of the "found in" provision of § 1326(a) is a continuing offense, and (b) Rivera–Ventura's conduct had tolled the running of the statute. Rivera–Ventura pursues his statute-of-limitations argument on appeal. For the reasons below, we conclude that the running of the statute was tolled, and we therefore affirm the judgment of the district court.

## I. BACKGROUND

In September 1986, Rivera–Ventura, a native of El Salvador, illegally entered the United States near San Ysidro, California. He was immediately arrested by officials of the Immigration and Naturalization Service ("INS"), and on September 30, 1986, he was ordered deported. The written notice of deportation informed Rivera–Ventura in both English and Spanish that, should he wish to return to the United States following his deportation, he would need to obtain permission to do so. The notice stated that any deported person who returns to the United States without such permission is guilty of a felony punishable by up to two years' incarceration and a fine of up to $1,000. Rivera–Ventura was deported from the United States in October 1986.

Approximately one year later, Rivera–Ventura again illegally entered the United States, this time near Brownsville, Texas, and was soon arrested by INS agents, who found him hiding in the back of a truck. The INS promptly commenced deportation proceedings against him. On Rivera–Ventura's motion, venue was transferred from Texas to New York in November 1987. Represented by counsel, Rivera–Ventura conceded in writing that he was deportable, and he requested an opportunity to apply for discretionary relief from deportation, including political asylum. Rivera–Ventura was released on bail pending his administrative hearing, having provided the INS with an address in Flushing, New York, where he represented that he would reside pending further proceedings. This address was later discovered to be false.

A letter informing Rivera–Ventura that his hearing would be held on February 18, 1988, was sent to him at the address he had falsely provided. When he failed to appear for the hearing, the immigration judge ordered that the matter be returned to the INS for appropriate action. No criminal charges were filed at that time, and it is unclear what steps, if any, the INS took to locate Rivera–Ventura. Although Rivera–Ventura was arrested by local law enforcement officials several times between 1987 and September 1994 on charges of driving while intoxicated, he escaped INS detection each time by giving the local officials a false name.

Rivera–Ventura was finally rearrested by INS agents in September 1994, after they were alerted to his incarceration in New York on charges of drunk driving. He was indicted in October 1994 for the offense of being "found in" the United States between October 1987 and September 1994, having previously been deported and not having obtained the permission of the Attorney General to reenter, in violation of 8 U.S.C. § 1326(a). Rivera–Ventura moved to dismiss the indictment on the ground that, since his unlawful postdeportation reentry had occurred in 1987 and the government had found him in the United States at that time, the 1994 indictment was barred by the five-year statute of limitations set out in 18 U.S.C. § 3282 (1994).

The district court denied the motion on two grounds. In an Amended Memorandum and Order dated May 8, 1995, reported at 885 F.Supp. 447, the court first ruled that the crime of being "found in" the United States without the requisite permission following deportation is a continuing offense that is not complete until the alien is discovered by the federal authorities. As to an alien who unlawfully enters the United States, is discovered, and thereafter absconds, the court ruled

that "he or she should be deemed to have made the decision to commit the separate offense of being in the United States illegally through evasion of the authorities, a crime completed whenever he or she is *subsequently* 'found.' " 885 F.Supp. at 450–51 (emphasis added). The court concluded that the 1994 indictment of Rivera–Ventura was timely because, though initially arrested in 1987, he was not again found until September 16, 1994, and thus his offense was not completed until the latter date.

Alternatively, the court noted that the U.S.Code provides for the tolling of statutes of limitations with respect to a person "fleeing from justice," 18 U.S.C. § 3290 (1994), a term that has generally been interpreted to mean a flight with intent to avoid or frustrate prosecution, and it concluded that Rivera–Ventura's abscondence in 1987 constituted such a flight.

A person flees from justice when he realizes that there is a high probability that he will be prosecuted for a crime and he hides or absents himself with the intent to frustrate prosecution. *See, e.g., Streep v. United States,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895); *United States v. Catino,* 735 F.2d 718, 722 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). It is not necessary that actual formal prosecution be commenced. *See Streep,* 160 U.S. at 133–34, 16 S.Ct. at 246 ("It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not actually begun.").

. . . .

The defendant's flight was from United States prosecutorial forces—the INS. He could have been criminally charged when he reentered this country illegally in 1987 after having once been deported. That the INS initially decided to deport, rather than prosecute him, does not allow him now to escape the consequences of his six-year flight. The defendant knew that deportation proceedings were scheduled because he requested and received a change of venue for them. Moreover, the defendant

had been deported once before and can, therefore, be assumed to have been familiar with such proceedings. The evidence demonstrates that rather than submit to the jurisdiction of the deportation hearing, the defendant concealed himself with "the intent of avoiding arrest." The evidence includes his providing a false address to the INS in connection with the deportation hearing; his failure to contact the INS to correct the error; and his use of aliases in connection with his drunk driving offenses. Even if the statute of limitations began running in Texas in 1987, it was tolled during the time he was a fugitive. The statute of limitations, therefore, does not bar his prosecution for being "found."

885 F.Supp. at 451–52.

Rivera–Ventura was allowed to enter a conditional plea of guilty to the one-count indictment, reserving the right to appeal the denial of his statute-of-limitations motion.

## II. DISCUSSION

Section 1326 provides, with certain exceptions not pertinent here, that "any alien who (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States," shall be fined or imprisoned or both. 8 U.S.C. § 1326(a). Section 3282 of Title 18, which governs the time within which most noncapital federal offenses may be prosecuted, requires that an indictment be handed down "within five years next after such offense shall have been committed," and states that this five-year period may not be extended "[e]xcept as otherwise expressly provided by law." 18 U.S.C. § 3282. One such express provision is that "[n]o statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290.

On this appeal, Rivera–Ventura contends that the district court erred in ruling that being "found in" the United States in violation of § 1326(a) is a continuing offense as to which the statute of limitations provided by § 3282 did not begin to run until he was *re*found in the United States in 1994. He also contends that the court erred in its alternative ruling that the statute was tolled under

§ 3290, arguing that that section has been interpreted to apply only to flights from criminal prosecution, that he was fleeing from deportation, and that deportation is a civil, not a criminal, process. Though we do not endorse the district court's ruling that being "found" in the United States within the meaning of § 1326(a) constitutes a continuing offense, we agree with the court that the running of the statute of limitations was tolled.

## A. Whether Being "Found" Is a Continuing Offense

█ Statutes of limitations are statutes of repose. Those applicable to criminal prosecutions are designed principally to protect individuals from having to defend themselves against charges supported by facts that are remote in time. See generally Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) ("Toussie"). Accordingly, the Supreme Court has held that "criminal limitations statutes are to be liberally interpreted in favor of repose." Id. at 115, 90 S.Ct. at 860 (internal quotation marks omitted); see also United States v. Habig, 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968); United States v. Scharton, 285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932). The limitations period will normally begin to run when a crime is "complete," thereby "encouraging law enforcement officials promptly to investigate suspected criminal activity." Toussie, 397 U.S. at 115, 90 S.Ct. at 860.

█ A "continuing offense" is, in general, one that involves a prolonged course of conduct; its commission is not complete until the conduct has run its course. See, e.g., id. at 115, 120–21, 90 S.Ct. at 860, 863; United States v. Cores, 356 U.S. 405, 408–09, 78 S.Ct. 875, 877–78, 2 L.Ed.2d 873 (1958). Though some conduct, even before it is concluded, may fit the statutory definition of a crime, thereby permitting institution of a prosecution before the offense is complete, see, e.g., United States v. Cores, 356 U.S. at 408–09, 78 S.Ct. at 877–78, the limitations period for a continuing offense does not begin until the offense is complete, see, e.g., Toussie, 397 U.S. at 115, 90 S.Ct. at 860. The Toussie

Court recognized the obvious "tension between the purpose of a statute of limitations and the continuing offense doctrine," since "the latter, for all practical purposes, extends the statute beyond its stated term." Id. at 115, 90 S.Ct. at 860 (internal quotation marks omitted). Noting that § 3282 states that the five-year limitations period provided therein "should not be extended '[e]xcept as otherwise expressly provided by law,'" the Court concluded that a crime should not be construed as a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Toussie, 397 U.S. at 115, 90 S.Ct. at 860. We conclude that § 1326(a) does not meet this standard.

█ Section 1326(a), by its terms, describes an offense that is complete when any of three events occurs: when a previously deported alien (1) "enters," or (2) "attempts to enter," or (3) "is at any time found in" the United States. 8 U.S.C. § 1326(a)(2); see, e.g., United States v. DiSantillo, 615 F.2d 128, 134 (3d Cir.1980). The offense of illegal entry or illegal attempt is normally uncomplicated and is complete as soon as the entry or attempt is made. See generally H.R.Rep. No. 1365, 82d Cong., 2d Sess. (1952), reprinted in 1952 U.S.C.C.A.N. 1653, 1683 ("Normally an entry occurs when the alien crosses the border of the United States and makes a physical entry, and the question of whether an entry has been made is susceptible of a precise determination."). The offense of being "found in" the United States, however, is somewhat more complex, since it depends not only on the conduct of the alien but also on acts and knowledge of the federal authorities. Thus, since the alien may be in the United States unlawfully after making a surreptitious border crossing that conceals his presence, see, e.g., United States v. Gomez, 38 F.3d 1031, 1033–34 (8th Cir.1994), or after entering through a recognized port by means of specious documentation that conceals the illegality of his presence, see, e.g., United States v. Ortiz–Villegas, 49 F.3d 1435, 1437 (9th Cir.), cert. denied, — U.S. —, 116

S.Ct. 134, 133 L.Ed.2d 82 (1995); *United States v. Gay*, 7 F.3d 200, 202 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994), the offense of being "found in" the United States in violation of § 1326(a) is not complete until the authorities both discover the illegal alien in the United States, *see, e.g., United States v. Whittaker,* 999 F.2d 38, 41 (2d Cir.1993), and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence, *see, e.g., United States v. Gomez,* 38 F.3d at 1037. The mere need for a confluence of factors before the offense is complete, however, does not mean that the offense is a continuing one past the occurrence of the last factor.

The best argument for construing the "found in" clause of § 1326(a) as defining a continuing offense is that the phrase "found in" is accompanied by the words "at any time." We doubt the validity of this argument, for Congress's use of the word "found" suggests a focus on the time at which the authorities' location of the alien and their knowledge of the illegality of his presence converge, and that focus indicates that the offense is complete at the time of that convergence. To the extent that § 1326(a) makes it a crime to be "found in" the United States, that provision is the practical equivalent of making unlawful "entry" a continuing offense until at least such time as the alien is located. But we see no indication that Congress intended being "found" itself to be treated as a continuing offense so that an alien whom the authorities have once taken into custody with knowledge of the illegality of his presence may be repeatedly deemed to have been "found" at some later time or times. If Congress had meant that the unlawfully returned alien could be prosecuted at any time that he could be located in the United States, it could have accomplished this with clarity either by stating expressly that being "found" is to be deemed a continuing offense, *see, e.g.,* 18 U.S.C. § 3284 (1994) (concealment of bankrupt's assets "shall be deemed to be a continuing offense" until date of final bankruptcy discharge); or by, instead of the phrase "is at any time found in," using a phrase such as "remains in," *see, e.g., United States v. Cores,* 356 U.S. at 408 & n. 6, 78

S.Ct. at 878 n. 6; or by simply omitting the word "found" from § 1326(a). We think it more likely that the "found in" clause was included to make it clear that if an alien illegally reenters the United States after deportation, he is subject to prosecution even if the government does not discover him or the illegality of his entry until after the time to prosecute him for illegal entry has expired.

■ Since we have seen no clear indication that Congress must have intended the "found in" clause of § 1326(a) to define a continuing offense, we conclude that the statute of limitations began to run when Rivera–Ventura was apprehended by the INS in 1987.

### B. *Tolling*

We are in agreement, however, with the district court's ruling that in absconding, Rivera–Ventura tolled the running of the five-year limitations period in accordance with the provision in 18 U.S.C § 3290 that "[n]o statute of limitations shall extend to any person fleeing from justice."

The substance of § 3290 dates back to 1790, *see* Act of April 30, 1790, ch. 9, § 32, 1 Stat. 119; *see also United States v. Smith,* 28 Fed.Cas. 1158, 1160 (D.Conn.1809), and the leading "modern" case interpreting it is *Streep v. United States,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895) ("*Streep*"). In *Streep,* the defendant was indicted in state court and fled from the state before being indicted in the federal system, and the question was whether his flight prior to the institution of the federal prosecution constituted a flight from "justice" within the meaning of what is now § 3290. The Supreme Court held that it did:

In order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

160 U.S. at 133, 16 S.Ct. at 246. The Court concluded that a flight from the justice to be meted out by the state system was sufficient to invoke the tolling provision of § 3290 with respect to the federal prosecution. *See id.* at 134, 16 S.Ct. at 246–47 ("The statute speaks generally of 'fleeing from justice,' without restriction either to the justice of the State, or to the justice of the United States.").

■■■■■ Consistent with *Streep,* both "justice" and "fleeing," as used in § 3290, have been given broad interpretations. Thus, when a defendant has been indicted by a federal grand jury in one district and is unaware of that indictment, his flight to avoid prosecution in a different federal district under an unrelated federal indictment of which he is aware tolls the running of the statute on the charges of which he is unaware. *See United States v. Gonsalves,* 675 F.2d 1050, 1052–53 (9th Cir.), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982) (§ 3290 "den[ies] the benefits of *all* statutes of limitations to a person fleeing from justice in *any* federal jurisdiction" (emphasis in original)). Further, this Court has held that where a person was aware that a criminal investigation was underway, he may have "fle[d]" within the meaning of § 3290 even though no prosecution had been commenced in any jurisdiction. *See Jhirad v. Ferrandina,* 486 F.2d 442 (2d Cir.1973) ("*Jhirad I* "), *on remand,* 377 F.Supp. 34 (S.D.N.Y.1974), *aff'd,* 536 F.2d 478 (2d Cir.) ("*Jhirad II* "), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) (collectively "*Jhirad* ").

■■■■■ Nonetheless, as intimated in *Streep,* the concept of flight includes an element of intent. *See, e.g.,* 160 U.S. at 133, 16 S.Ct. at 246 (no statute-of-limitations defense is available to "any person who takes himself out of the jurisdiction, *with the intention of avoiding being brought to justice for a particular offence* " (emphasis added)); *id.* (for tolling to apply, it is "sufficient that there is a flight *with the intention of avoiding being prosecuted* " (emphasis added)). Thus, in *Jhirad I,* we held that a person's departure from the jurisdiction did not constitute "fleeing" within the meaning of § 3290 unless his intent in departing was to avoid arrest or prosecution:

> [O]n the basis of the plain language and the purpose of Section 3290 ... the government must show an intent to flee from prosecution or arrest before the statute of limitations is tolled.... [T]he phrase "fleeing from justice" carries a common sense connotation that only those persons shall be denied the benefit of the statute of limitations who have absented themselves from the jurisdiction of the crime with the intent of escaping prosecution. It does not appear to us to be unreasonable to provide for tolling of the statute of limitations when a person leaves the place of his alleged offense to avoid prosecution or arrest and for not tolling the statute when a person without such purpose of escaping punishment merely moves openly to another place of residence.

*Jhirad I,* 486 F.2d at 444–45. Accordingly, we rejected the district court's ruling that mere absence from the jurisdiction constituted flight.

In *Jhirad II,* however, we construed "fleeing" liberally, ruling that § 3290 encompasses not only physical flight but also constructive flight, and that even if the intent in departing was not to flee, a person's absence from the jurisdiction would constitute fleeing within the meaning of § 3290 if his intent in remaining absent was to avoid arrest or prosecution. *Jhirad* was a habeas corpus proceeding brought in federal court to avert extradition on embezzlement charges lodged in India in 1968 in connection with expenditures of funds from 1959 to December 1961. Jhirad had departed from India in July 1966, aware that an investigation had begun into his handling of the funds. In determining whether the statute of limitations had run, thereby preventing Jhirad's extradition, the district court found that Jhirad's principal purpose in leaving India in July 1966 had been to attend a conference in Belgium; but the court also found that by September 1966 Jhirad intended not to return to India and that that intention was motivated by his desire to avoid arrest or prosecution. We upheld the district court's conclusion that Jhirad's decision not to return to India consti-

tuted constructive flight within the ambit of § 3290:

> We are convinced that the notion of "constructive flight" developed by the magistrate, although concededly without precedent, is fully supported by both the language and the logic of 18 U.S.C. § 3290. We cannot agree with Jhirad that a meaningful distinction exists between those who leave their native country and those who, already outside, decline to return.

*Jhirad II,* 536 F.2d at 483 (footnote omitted). Persuaded that Jhirad's "movements were prompted by a desire to avoid and thwart the orderly workings of the judicial process," *id.,* we thus affirmed the denial of his petition to avoid extradition.

In *United States v. Catino,* 735 F.2d 718 (2d Cir.1984), we extended the concept of constructive flight under § 3290 to an incarcerated person's refusal to waive extradition. We stated that "[a] person can be 'fleeing from justice' in one jurisdiction even though in prison in another," *id.* at 722, and ruled that although the defendant's imprisonment in France had prevented him from returning to the United States on his own, his opposition to extradition "constituted a constructive flight from justice, thereby tolling the statute of limitations period," *id.* at 722–23.

■ All of these cases involved defendants who were alleged to have sought to escape prosecution on criminal charges, and the interpretations of § 3290 dealt with the scope of "fleeing" and the provenance of "justice." No case of which we are aware has dealt with the question raised by Rivera–Ventura as to whether the scope of "justice" as used in § 3290 extends to civil deportation proceedings. *Cf. Bar–Levy v. United States Department of Justice, I.N.S.,* 990 F.2d 33, 34–35 (2d Cir.1993) (after failing to surrender pursuant to a lawful order of deportation, an alien "[a]lthough ... not, strictly speaking, a fugitive in a criminal matter, ... is nonetheless a fugitive from justice" for purposes of bringing the alien "within the ambit of cases in which courts exercise their discretion to dismiss appeals by fugitives"). Although a deportation proceeding is indeed generally regarded as "a purely civil action to determine eligibility to remain in this country,"

*INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984), and "not [one] to punish past transgressions," *id.* at 1039, 104 S.Ct. at 3483, Rivera–Ventura's argument adopts too narrow a view of his circumstances.

Rivera–Ventura was not merely a person subject to a civil proceeding. Rather, as he knew, he was also subject to arrest and prosecution on at least one felony charge. Upon his deportation in 1986, Rivera–Ventura was expressly informed that if he reentered the United States without permission he would be guilty of a felony punishable by, *inter alia,* up to two years' imprisonment. When he reentered without permission in 1987, he was subject to prosecution for violating § 1326(a); it was immaterial to the operation of § 3290 that no prosecution had yet begun when he absconded. And the fact that the INS had indicated its intention to deport him, so long as that intention remained inchoate, did not make Rivera–Ventura less subject to prosecution for his unlawful reentry.

The district court, stating that Rivera–Ventura's flight was from federal "prosecutorial forces" since "[h]e could have been criminally charged when he reentered this country illegally in 1987 after having once been deported," found that Rivera–Ventura had absented himself from the 1988 deportation proceedings and had "concealed himself with 'the intent of avoiding arrest.'" 885 F.Supp. at 451. The findings that Rivera–Ventura was fleeing from prosecution or arrest are supported by, *inter alia,* the evidence that Rivera–Ventura knew he could be prosecuted as a felon for his unlawful reentry, that he chose to become a fugitive by giving the INS a false address in order to gain his release on bail (a representation that perhaps further subjected him to criminal prosecution, *see* 18 U.S.C. § 1001 (making false statement to government agency on a matter within its jurisdiction punishable by fine and up to five years' imprisonment)), and that he chose to remain a fugitive by failing to appear for his hearing, not informing the INS of his whereabouts, and giving local law enforcement officials false names. Though Rivera–Ventura argues that he fled only from deportation

and that there was no evidence that he was fleeing from the possibility of prosecution, the district court as the finder of fact was free to infer, from Rivera–Ventura's obvious intent to conceal himself and from his knowledge that he could be criminally prosecuted, that his intent was at least in part to flee from prosecution. The fact that Rivera–Ventura may have sought to avoid deportation as well as prosecution does not make the district court's finding erroneous.

In sum, we conclude that an alien who knows he is subject to criminal prosecution and who gives the INS and other law enforcement authorities false names and addresses has engaged in acts of self-concealment that may properly be found to constitute constructive flight within the meaning of § 3290. We need not decide whether an abscondence by an alien subject to deportation but not to criminal charges would toll the running of the statute of limitations. We conclude that § 3290's concept of a person "fleeing from justice" is surely broad enough to encompass one who is subject to both deportation and prosecution for reentering the United States unlawfully and who seeks to avoid either prosecution or both prosecution and deportation by giving the authorities false information in order to conceal himself.

### CONCLUSION

We have considered all of Rivera–Ventura's arguments on appeal and find in them no basis for reversal. The judgment of conviction is affirmed.