107 F.3d 5
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Aston St. Patrick WALLACE, Defendant-Appellant.
 No. 96-1340.
 United States Court of Appeals, Second Circuit.
 Jan. 15, 1997.
 
 1
 APPEARING FOR APPELLANT: Mackson Plato McDowall, Buffalo, N.Y.
 
 
 2
 APPEARING FOR APPELLEE: Gretchen Wylegala, Asst. U.S. Atty., Buffalo, N.Y.
 
 
 3
 Before NEWMAN, Chief Judge, and McLAUGHLIN and CUDAHY,* Circuit Judges.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 5
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 6
 Aston St. Patrick Wallace appeals from the May 13, 1996, judgment of the District Court convicting him after a jury trial of one count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326. Wallace contends that the evidence was insufficient to support his conviction and that the jury charge was erroneous.
 
 
 7
 At trial, the Government introduced the testimony of Immigration Judge Marvin Spiegel, who had presided over the defendant's deportation proceedings in 1990. Judge Spiegel authenticated the tape recordings of the deportation hearing, which, along with his testimony, established that Judge Spiegel had ordered the defendant deported.
 
 
 8
 In addition, an agent of the Immigration and Naturalization Service ("INS") testified that after the hearing, he served the defendant with a deportation notice at the INS detention facility where the defendant was detained. That agent further testified that it was his usual practice to go through the notice with the detainee and to advise the detainee that he had, in fact, been deported.
 
 
 9
 Two INS agents testified that Wallace indicated that his Alien Registration Card (his "Green Card") and foreign passport were either lost, stolen, or at home. Wallace, however, testified that not only had INS officers returned his Green Card to him, but also that Judge Spiegel had told him that he could return to the United States.
 
 
 10
 Finally, an INS Deportation Officer testified that on May 16, 1990, he physically deported the defendant at Miami Airport, identifying the flight number of the plane that carried the defendant back to Jamaica. Before the defendant boarded the flight, the Deportation Officer served him with a Warrant of Deportation, and placed the defendant's thumbprint on a deportation document to verify that the defendant had left the country.
 
 
 11
 Thereafter, in July 1990, Wallace returned to the United States, using his invalid Green Card and his foreign passport. He was allowed to enter the country unchallenged.
 
 
 12
 1. The offense of being "found in" the United States after deportation may be proven on evidence that a deported alien either made a "surreptitious border crossing" or entered "by means of specious documentation that conceals the illegality of his presence." United States v. Rivera-Ventura, 72 F.3d 277, 282 (2d Cir.1995). The evidence demonstrating that Wallace used an invalid Green Card to gain entry is sufficient to demonstrate the use of "specious documentation" concealing the illegality of his presence. It was not necessary for the jury to be charged, or for the Government to prove, that the defendant's entry was surreptitious. Id. Furthermore, Wallace's subjective belief that his Green Card was still valid is irrelevant. United States v. Champegnie, 925 F.2d 54, 55 (2d Cir.1991) (per curiam) (no good faith or mistake defense to section 1326 offense).
 
 
 13
 2. Wallace next argues that the District Court improperly instructed the jury that "[a]n alien is considered arrested and deported when a warrant [of] deportation has been issued." Appellant does not dispute that the Court properly instructed the jury that an element of the crime is the defendant's knowledge that he had been arrested and deported. In light of the extensive, undisputed testimony that Wallace had been physically deported by being placed on a flight to Jamaica by an INS officer, after a deportation warrant had been served upon him, any misdescription of what constitutes deportation was, at most, harmless error. Appellant did not dispute that he had been placed on the plane; he claimed he thought he was entitled to return.
 
 
 
 *
 Of the United States Court of Appeals for the Seventh Circuit, sitting by designation