United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 12, 2007**

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals*
*For The Fifth Circuit*

No. 05-40631

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FELIPE DE JESUS YERENA-MAGANA,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Southern District of Texas
No. 7:04-CR-00678

———————————————

Before SMITH, GARZA, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Felipe De Jesus Yerena-Magana (Yerena-Magana) pleaded guilty to possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841, and the district court sentenced him to 70 months in prison. Yerena-Magana challenges his sentence, arguing that the district court improperly calculated his criminal history score. We affirm.

**I**

On May 24, 2004, Yerena-Magana, a citizen of Mexico, unlawfully entered the United States. A confidential source advised government agents that, on June 2, 2004, someone had purchased watermelons as "cover" for a shipment of marijuana from McAllen, Texas to Allentown, Pennsylvania, and that the shipment did in fact occur on June 5. The same source later informed government agents that a similar shipment would take place on

June 24, 2004. On that date, Drug Enforcement Administration agents conducted surveillance and found Yerena-Magana on a loading dock at a produce company in Edinburg, Texas in possession of more than 900 kilograms of marijuana, which he had concealed in watermelon containers. Witnesses later informed the government that about three weeks earlier, in the first part of June, Yerena-Magana had purchased a large quantity of watermelons that were to be thrown away and two days later, loaded them onto a tractor-trailer and hauled them away.

Yerena-Magana was not immediately charged with drug offenses. However, on June 24, 2004, the date Yerena-Magana was discovered with the marijuana, he was arrested and charged with unlawfully entering the United States, in violation of 8 U.S.C. § 1325. He pleaded guilty to unlawful entry, and during sentencing for that offense, the court was informed that Yerena-Magana had been arrested after having been "observed delivering a truckload of watermelons in which marijuana was concealed." Yerena-Magana was sentenced to a jail term of 60 days.

While Yerena-Magana was serving his 60-day sentence, the government charged him with conspiracy[1] and possession[2] of marijuana with the intent to distribute. Pursuant to a plea agreement, Yerena-Magana pleaded guilty to the possession charge, and the conspiracy charge was dismissed. In the presentence report (PSR), the probation officer concluded that Yerena-Magana unlawfully entered the United States as part of the drug offense, and therefore, assessed no criminal history points for Yerena-Magana's unlawful-entry sentence.[3]

---

[1]21 U.S.C. § 846; *see also id.* § 841(a)(1), (b)(1).

[2]*Id.* § 841(a)(1), (b)(1); *see also* 18 U.S.C. § 2 (liability as a principal).

[3]*See* UNITED STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 4A1.1(b) (2004) (instructing the district court to "[a]dd 2 points for each prior sentence of imprisonment of at least sixty days . . . ."); *id.* § 4A1.2, cmt. n.1 (explaining that a "prior sentence" does not include a sentence

2

Based on a total offense level of 26 and a criminal history category of I, the PSR calculated a Guidelines imprisonment range of 63 to 78 months.

At sentencing, the district court disagreed with the PSR, concluding that Yerena-Magana's unlawful entry was not part of the drug offense, but rather a severable and distinct offense within the meaning of section 4A1.2(a)(1) of the Guidelines.[4] Therefore, the court assessed Yerena-Magana two criminal history points for his unlawful-entry sentence, which raised his criminal history to category II and resulted in an advisory imprisonment range of 78 to 97 months. Moreover, with the addition of the two points, Yerena-Magana became ineligible for the "safety valve" provision set forth in 18 U.S.C. § 3553(f), which permits a sentencing court to disregard a statute's minimum sentence.[5] The district court sentenced Yerena-Magana to a prison term of 70 months,[6] a downward departure from the advisory Guidelines imprisonment range,[7] but in excess of the statutory five-year minimum sentence.

## II

Yerena-Magana argues that the district court erred in calculating his criminal history score. He acknowledges that the district court sentenced him below the Guidelines range

imposed for "conduct that is *relevant* conduct to the instant offense under the provisions of section 1B1.3" (emphasis added)).

[4]*See id.* § 4A1.2(a)(1) (defining a "prior sentence" as "any sentence previously imposed . . . for conduct not part of the instant offense").

[5]*See* 18 U.S.C. § 3553(f) (permitting a sentencing court to disregard a statute's minimum sentence if it finds the defendant meets five requirements, one of which is that the defendant not have more than one criminal history point).

[6]The district court also sentenced Yerena-Magana to four years of supervised release and a $100 special assessment.

[7]*See* U.S.S.G. § 4A1.3(b) (2004) (providing that a downward departure may be appropriate"[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . .").

3

that he contends is applicable but argues that had the district court not assigned the two points, he would have been eligible for the safety valve provision, which would have allowed the court to sentence him below the 60-month statutory minimum sentence.[8] "Although the Sentencing Guidelines are now advisory, we continue to review the district court's application of the Guidelines *de novo* and its factual findings for clear error."[9]

In calculating the criminal history score under U.S.S.G. § 4A1.1(b), a court is to add two points to a defendant's criminal history score "for each prior sentence of imprisonment of at least sixty days" that was not counted in subpart (a) as a sentence "exceeding one year and one month."[10] The Guidelines define a "prior sentence" as "any sentence previously imposed . . . for conduct not part of the instant offense."[11] The commentary to the Guidelines explains that "conduct not part of the instant offense" is to be determined with reference to section 1B1.3, which defines relevant conduct:

> Prior Sentence. "Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. See § 4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. *Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3 (Relevant Conduct).*[12]

---

[8]Because the marijuana's net weight was calculated at 976.6 kilograms, Yerena-Magana's statutory minimum sentence was five years. *See* 21 U.S.C. § 841(b)(1)(B)(vii) (setting a five-year minimum sentence for any person convicted of possessing with the intent to distribute over 100 kilograms of marijuana); *cf. id.* § 841(b)(1)(A)(vii) (setting a ten-year minimum sentence for any person convicted of possessing with the intent to distribute over 1,000 kilograms of marijuana).

[9]*United States v. Ingles*, 445 F.3d 830, 840 (5th Cir. 2006).

[10]U.S.S.G. § 4A1.1(a), (b) (2004).

[11]*Id*. § 4A1.2(a)(1).

[12]*Id*. § 4A1.2, cmt. n.1 (emphasis added).

4

When the Commission added the last sentence of the foregoing commentary in 1993, it explained the reason for doing so: "This amendment expressly provides that the term 'part of the instant offense' in § 4A1.2(a)(1) means relevant conduct as defined in § 1B1.3 (Relevant Conduct) to avoid double counting and ensure consistency with other guideline provisions."[13]

Yerena-Magana asserts that his previous sentence for unlawful entry was "relevant conduct" within the meaning of U.S.S.G. § 1B1.3, which includes "all acts and omissions . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."[14] He additionally contends that his 60-day sentence for illegal entry is a not "prior sentence" that should be considered in calculating his criminal history score under U.S.S.G. § 4A1.1, because it was a sentence "imposed in [a] related case[]" within the meaning of U.S.S.G. § 4A1.2(a)(2), which provides:

> Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.[15]

Yerena-Magana argues that in light of "common knowledge" of the "close relationship between illegal immigration and drug crimes emanating from the border area," and the temporal relation between his illegal entry and drug offense, the conclusion must be drawn that he entered the United States illegally in preparation for his drug offense. But for his illegal entry, he asserts, he could not have committed the drug offense, and therefore, his

---

[13]*Id*. app. C, amend. 493.

[14]*Id*. § 1B1.3(a)(1)(A).

[15]*Id*. § 4A1.2(a)(2).

5

illegal entry is "relevant conduct."

Yerena-Magana cites this court's decision in *United States v. Salter*, which employed a "but for" analysis in applying section 4A1.2.[16]  In that case, Salter had prior convictions for drug trafficking and tax evasion.  The tax evasion conviction resulted from Salter's failure to report a profit of $75,000 from the drug trafficking that was the basis of his other prior conviction.[17]  This court held that "[b]ut for the drug trafficking Salter would not have had the $75,000."[18]  The court relied on the commentary to section 4A1.2 that discusses "related cases," stating that "prior sentences are related 'if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.'"[19]  The court held in *Salter* that the prior drug trafficking and tax evasion "offenses should have been considered part of a common scheme or plan" and that pursuant to section 4A1.2, were to be treated as one sentence for purposes of section 4A1.1.[20]

Yerena-Magana's reliance on *Salter* is misplaced.  The inquiry in that case was whether Salter's two prior sentences were "[p]rior sentences imposed in related cases" within the meaning of section 4A1.2(a)(2).[21]  That is a different inquiry from whether a prior sentence was imposed "for conduct not part of the instant offense" within the meaning of

---

[16]241 F.3d 392, 396 (5th Cir. 2001).

[17]*Id.*

[18]*Id.*

[19]*Id.* (quoting U.S.S.G. § 4A1.2, cmt. n.3).

[20]*Id.*

[21]U.S.S.G. § 4A1.2(a)(2) (2004) ("Prior sentences imposed in unrelated cases are to be counted separately.  Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c).").

6

section 4A1.2(a)(1), as this court held in *United States v. Thomas*.[22] The application of subsection (2) examines the relationship between two prior sentences. The application of subsection (1) examines the relationship between a prior sentence and the offense for which a sentence is to be imposed. In *Thomas*, this court explained:

> The interpretation of "conduct not part of the instant offense" is a matter of first impression in this circuit. While Thomas argues that the critical inquiry here should be whether the prior and instant offense are related, other courts do not agree. *See United States v. Walling*, 936 F.2d 469, 471 (10th Cir. 1991) ("The question of 'related cases' referred to in § 4A1.2(a)(2), applies to the relationship between prior sentences, not the relationship between prior sentences and the present offense."); *United States v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990) ("There is no indication that the commentary [defining 'related cases'] was intended to define the words 'conduct not part of the instant offense' in sec. 4A1.2(a)(1)."). We believe the critical inquiry is whether the prior conduct constitutes a "severable, distinct offense" from the offense of conviction. *United States v. Blumberg*, 961 F.2d 787, 792 (8th Cir. 1992); *see United States v. Beddow*, 957 F.2d 1330, 1338 (6th Cir. 1992).[23]

This construction of section 4A1.2(a)(1) and (a)(2) remains the law in this circuit, with the exception that in light of the 1993 amendments to the commentary to section 4A1.2(a), the "critical inquiry" of what constitutes "conduct not part of the instant offense"[24] focuses on relevant conduct within the meaning of section 1B1.3.[25]

Accordingly, in *United States v. Vargas-Garcia*, this court looked to section 1B1.3 to determine whether a prior sentence for resisting arrest was relevant conduct with regard to being found in the United States without obtaining the permission of the Attorney General

---

[22]973 F.2d 1152, 1158 (5th Cir. 1992).

[23]*Id.*

[24]U.S.S.G. § 4A1.2(a)(1) (2004) ("The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.").

[25]*Id*. § 4A1.2, cmt. n.1.

7

to reenter in violation of 8 U.S.C. § 1326.[26] The illegal immigrant was stopped by local state authorities for a traffic violation. He resisted arrest and during an ensuing scuffle, told police he had illegally returned to this country after being removed and could not allow them to arrest him.[27] He initially evaded the officers' grasp but was captured after a brief chase.[28] About three weeks later, the defendant was indicted and charged with illegal reentry after removal. He was subsequently arrested by federal authorities and pleaded guilty to those charges. In the meantime, the defendant had pleaded guilty to state law charges of resisting arrest, evading arrest, and failure to identify. The district court considered the state-law sentence for evading arrest in calculating the defendant's criminal history score.[29] The defendant appealed, contending that his resistance of arrest was relevant conduct since he was attempting to avoid detection and the responsibility for his illegal reentry when he committed the state resisting-arrest offense.[30] This court held that the district court did not plainly err "if, indeed, it was error at all" in concluding otherwise.[31] The court primarily focused on the difference between the offense of illegal reentry, which "'is complete as soon as the entry or attempt is made'"[32] and being "found in" the United States.[33] The defendant had been convicted of only the latter. But in deciding the relevant conduct issue, the court

---

[26]434 F.3d 345, 346, 347-48 (5th Cir. 2005).

[27]*Id.* at 346.

[28]*Id.*

[29]*Id.* at 346-47.

[30]*Id.* at 347.

[31]*Id.* at 349.

[32]*Id.* (quoting *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995) (citing H.R. Rep. No. 1365, 82d Cong. 2d Sess. (1952))).

[33]*Id.*

reasoned that "the concept of separable prior offenses is based on 'different criminal conduct that harmed different societal interests,' involving two or more offenses that 'occurred at different times and places,'"[34] and that "[i]t was not plain error . . . for the district court to conclude that Vargas-Garcia's evasion of and resistance to arrest after a traffic stop weeks before his indictment for illegal reentry was a separate prior offense because it could be seen as embodying just such conduct severable by time, place, and harmed societal interest."[35]

An additional reason for the holding in *Vargas-Garcia* is particularly pertinent to the arguments Yerena-Magana has made in the case presently before us. The court concluded in *Vargas-Garcia* that illegal reentry does not give a defendant *carte blanche* under the relevant conduct section of the Guidelines:

> Moreover, adopting Vargas-Garcia's broad conclusions would require district courts to excise every crime committed after an alien's actual illegal reentry but before his discovery by law enforcement from the alien's criminal history at sentencing, giving convicted criminals a license to run amok based solely on the nature of their criminality. *Cf. Beddow*, 957 F.2d at 1339 (affirming a district court's sentence and stating that adopting the "broad interpretation of offense conduct" advanced by a defendant-appellant "would render almost every crime committed contemporaneously with some other offense part of that offense under U.S.S.G. § 4A1.2.").[36]

There is no evidence in the record before us that Yerena-Magana intended to commit the drug offense for which he was sentenced at the time he illegally entered the United States. We will not infer that he illegally entered this country "in preparation for"[37] the drug offense, as he requests. But even were there such evidence, the nexus between the illegal entry on May 24, 2004 and the drug offense on June 24, 2004 is too attenuated to constitute

---

[34]*Id.* at 350 (quoting *United States v. Beddow*, 957 F.2d 1330, 1339 (6th Cir. 1992)).

[35]*Id.*

[36]*Id.*

[37]U.S.S.G. § 1B1.3(a)(1) (2004) ("[A]ll acts and omissions . . . that occurred . . . in preparation for that offense . . . .").

9

"preparation for that offense."[38]  The illegal entry made the drug crime possible only in the most philosophic and metaphysical sense.  The illegal entry was a "discrete, noncontinuing offense . . . completed prior to"[39] the drug offense, which harmed different societal interests.

Yerena-Magana does not contend, and we do not consider, whether the illegal entry offense must be grouped with the drug offense under section 3D1.2(d).  We therefore have no occasion to consider whether the illegal entry was "part of the same course of conduct or common scheme or plan as the offense of conviction," within the meaning of section 1B1.3(a)(2),[40] or note 9 in the commentary to that section.[41]

Yerena-Magana argues that his unlawful entry is relevant conduct to the present drug offense because the sentencing judge in his unlawful-entry case "surely would have imposed a sentence of less than sixty days . . . but for the drug connection."  This argument is unsupported by the record.  While the record does reveal that the sentencing judge in Yerena-Magana's unlawful-entry case was informed that Yerena-Magana had been arrested while in possession of marijuana, there is no evidence indicating, as Yerena-Magana avers, that his drug possession "is why [the judge] imposed a 60-day jail sentence."  Accordingly, we conclude that the district court did not clearly err in finding that Yerena-Magana's unlawful entry was not relevant conduct to the instant drug offense.

\* \* \*

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

---

[38]*See United States v. Southerland*, 405 F.3d 263, 268-69 (5th Cir. 2005) (stating that "[i]n determining whether the flight and the offense of conviction are connected sufficiently, we look primarily to any evidence of the defendant's state of mind while fleeing" and concluding that the defendant's state of mind in fleeing related to ongoing offenses of automobile theft and drug possession, not bank robbery committed two months earlier).

[39]*Id.* at 268.

[40]U.S.S.G. § 1B1.3(a)(2) (2004).

[41]*Id*. cmt. n.9 (discussing the phrases "common scheme or plan" and "same course of conduct").