UNITED STATES of America, Appellee,

v.

Devon Anthony **WHITTAKER**,
Defendant–Appellant.

No. 1485, Docket 92–1732.

United States Court of Appeals,
Second Circuit.

Argued May 10, 1993.

Decided July 9, 1993.

Stephen R. Lewis, White Plains, NY (Stephens, Buderwitz, Baroni, Reilly, & Lewis, White Plains, NY, of counsel) for defendant-appellant, Devon Anthony Whittaker.

David L. Wales, Asst. U.S. Atty. S.D.N.Y., New York City (Roger S. Hayes, U.S. Atty., John W. Auchincloss, II, Asst. U.S. Atty. S.D.N.Y., New York City of counsel), for appellee, U.S.

Before: MINER, FRIEDMAN,* and McLAUGHLIN, Circuit Judges.

FRIEDMAN, Circuit Judge:

In this appeal, the appellant challenges on three grounds the sentence imposed following his conviction under a guilty plea to an information charging him with entering, attempting to enter, and being found in the United States without the permission of the Attorney General, in violation of 8 U.S.C. § 1326 (1988), after having been convicted of an aggravated felony and deported. First, he contends that the district court improperly applied the provision of an amended Sentencing Guideline that was adopted after he illegally reentered the United States, but before he was found there, which increased the offense level of the crime. The answer to whether that provision properly was applied turns on the meaning of section 1326, a question of first impression in this Court. Second, he argues that if the subsequent Guidelines provision applies in this case, then section 1326 is unconstitutionally vague as here applied. Third, he claims that the district court improperly refused a downward departure from the Guidelines. We reject all these contentions, and, therefore, affirm the conviction and sentence.

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

·I

The facts, as set forth in the Presentence Report, are undisputed. In December 1986, the appellant Whittaker, an alien from Jamaica, was convicted in a New York State court of first degree manslaughter for stabbing his girlfriend to death in a bar and sentenced to five to fifteen years imprisonment. Following Whittaker's release from prison on parole in 1991, he was deported to Jamaica for having been convicted of an aggravated felony.

On October 23, 1991, Whittaker reentered the United States illegally through the Tampa Bay, Florida airport, relying upon documentation that contained his picture, but a false name.

On April 8, 1992, the Immigration and Naturalization Service (INS) arrested Whittaker in New York. He admitted that he had illegally entered the United States.

Three weeks later a single count felony information was filed against him in the Southern District of New York. The information charged that, between October 1991 and April 8, 1992, Whittaker had "enter[ed], and attempt[ed] to enter, and was found in the United States after having been arrested and deported from the United States subsequent to a conviction for commission of an aggravated felony and without having obtained the permission of the Attorney General of the United States to re-enter the United States," in violation of 8 U.S.C. § 1326. Whittaker pleaded guilty and the district court sentenced him to forty-six months in prison, followed by three years of supervised release.

In applying the Sentencing Guidelines, the court held that the applicable Guideline was the amended Guideline in effect when Whittaker was arrested on April 8, 1992, and not the earlier Guideline in effect when Whittaker illegally reentered the United States on October 23, 1991, as Whittaker contended. The amended Guideline substantially increased the offense level for the crime for

which Whittaker was convicted. The district court also rejected Whittaker's request that it depart downwardly from the Guidelines.

## II

A. Section 1326 of Title 8 of the United States Code makes it a felony for an alien who has been deported and, without the prior consent of the Attorney General,

> (2) enters, attempts to enter, or is at anytime found in, the United States....

8 U.S.C. § 1326(a)(2).

The maximum penalty for an alien "whose deportation was subsequent to a conviction for commission of an aggravated felony" is a fine as provided in Title 18 of the United States Code and imprisonment for not more than fifteen years. *Id.* § 1326(b)(2).

The information in this case tracked the language of the Statute, except that it was in the conjunctive rather than the disjunctive. It charged that, from October 1991 to April 1992, Whittaker "did enter, and attempt to enter, and was found in the United States" after having been deported subsequent to a conviction for an aggravated felony and without the permission of the Attorney General to reenter the United States.

At the time Whittaker illegally entered the United States in October 1991, the applicable Guideline covering 8 U.S.C. § 1326 provided for a base offense level of eight and for a four-level increase "[i]f the defendant previously was deported after sustaining a conviction for a felony," U.S.S.G. § 2L1.2 (Nov. 1990), and provided that if the conviction was for "an aggravated felony as defined in 8 U.S.C. § 1101(a) ... an upward departure may be warranted." *Id.,* comment. (n. 3).

This Guideline was amended effective November 1, 1991 to read: "If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels." *Id.* § 2L1.2(b)(2) (Nov. 1991). An application note states that " 'Aggravated felony,' as used in subsection (b)(2), means murder ...; any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years."

*Id.,* comment. (n. 7). The crime of which Whittaker was convicted was an aggravated felony because (1) it had as "an element the use ... of physical force against the person ... of another," 18 U.S.C. § 16(a) (1988), (stabbing his girlfriend to death) and (2) Whittaker was sentenced to five to fifteen years imprisonment.

Whittaker contends that the crime to which he pleaded guilty was committed and completed when he entered the United States illegally on October 23, 1991, and that determining his sentence by applying the amended Guideline that was in effect when he was "found" and arrested on April 8, 1992, constituted an ex post facto application of the Guidelines.

██ Although defendants normally are punished in accordance with the Guidelines in effect at the time of sentencing, 18 U.S.C. § 3553(a)(4) (1988), sentencing may not be based on an amendment to the Guidelines that became effective after the offense was committed and that would result in a harsher punishment. *See, e.g., United States v. Rodriguez,* 989 F.2d 583, 587 (2d Cir.1993) ("An *ex post facto* problem normally arises when the version of the Guidelines used at sentencing results in a more severe sentence than that which would have resulted had the Guidelines version in effect at the time of commission of the crime been applied."); *United States v. Paccione,* 949 F.2d 1183, 1204 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992). Thus, the critical issue is when the federal offense of which Whittaker was convicted was committed.

██ B. Whittaker contends that the crime to which he pleaded guilty was his reentering the United States on October 23, 1991. He relies upon the following colloquy with the court during the hearing at which his guilty plea was accepted:

> THE COURT: Tell me what it is that you are pleading guilty to?
>
> THE DEFENDANT: I am pleading guilty to re-entering the United States without the okay of the Attorney General and I know I am wrong to enter the United States. I am pleading guilty for that.

Prior to making that statement, however, Whittaker had the following exchange with the court:

THE COURT: Mr. Whittaker, you are charged in this felony information substantially as follows:

From October 1991 through April 1992, in this district, you unlawfully, wilfully and knowingly entered and attempted to enter and were found in the United States after having been arrested and deported from the United States subsequent to a conviction for commission of an aggravated felony and without obtaining the permission of the Attorney General to re-enter the United States.

Do you understand those charges?

THE DEFENDANT: Yes,. sir.

THE COURT: And do you understand that if you plead guilty and are convicted, you may be sentenced to up to 15 years in prison or fined $250,000 or both, and that if you are imprisoned, there will be a period of supervised release after that imprisonment of up to three years and there will also be a special assessment of 50 dollars?

THE DEFENDANT: Yes, sir.

After the court stated that it would accept the plea, the clerk asked Mr. Whittaker, "You have heard the charges as explained to you by the Court. How do you plead?" Whittaker replied, "Guilty."

The information contained a single count, which charged Whittaker with entering, attempting to enter, and being found in the United States—the three situations the statute covers. The district court summarized to Whittaker the charge against him: that from October 1991 through April 1992, he "entered and attempted to enter and [was] found" in the United States after having been deported and without the permission of the Attorney General. Whittaker stated that he understood the charge and the maximum sentence he could receive "if you plead guilty and are convicted."

When Whittaker pleaded guilty, it was to the single offense with which he was charged and not just to part of it. *See, e.g., United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989) ("By enter-ing a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."); *United States v. Morrison,* 938 F.2d 168, 171 (10th Cir. 1991) ("By pleading guilty, defendant admitted that he committed the offense charged, namely, a mail fraud scheme ending in October 1987," and could not subsequently challenge the date his criminal activity ended.); *United States v. Newman,* 912 F.2d 1119, 1123 (9th Cir.1990) ("As a general matter, a guilty plea not only results in waiver of the right to a jury trial, the right to confront one's accusers and the privilege against compulsory self-incrimination, but also is an admission of guilt to the substantive crime."). His statement to the court that he was "pleading guilty to reentering the United States without the okay of the Attorney General" was a colloquial way of describing his offense, and cannot properly be interpreted as conceding guilt only of the entry, but not to being subsequently found in the United States. The judgment of conviction, which the district court signed, stated that Whittaker "pleaded guilty to count(s) 1" and that the date the "offense concluded" was "4–8–92." The court obviously viewed the guilty plea as covering the entire single offense charged, including the finding of Whittaker in the United States on April 8, 1992.

Furthermore, in arguing to the district court that it should apply the original Guideline and not the amended one, Whittaker did not contend that he had pleaded guilty only to unlawful entry. Instead, he argued that his offense had been completed upon entry, and that to apply the amended Guideline to his having been found in the United States would constitute an ex post facto application of the Guideline.

C. We thus reach the question of what section 1326 criminalizes. The Statute is designed to punish an alien who, following his deportation after commission of a felony and without the permission of the Attorney General, attempts to reenter or enters or, having reentered remains illegally in the country until he is found here, i.e., his presence is discovered. As the Court of Appeals for the Fifth Circuit recently stated, in affirming the

application of the amended Guideline to an alien who reentered the United States before the amendment, but was arrested after the amendment became effective,

> The clear language in 8 U.S.C. Section 1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense: 1) when one illegally enters the United States; 2) attempts to illegally enter the United States; or 3) when a deported alien is found at any time in the United States. The plain words of the statute set out discrete points in time when the crime may be committed.

*United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.1993).

In *Gonzales,* as in the present case, the alien "was charged by indictment with having illegally entered the United States and having been found as an illegal alien. He pled guilty to this charge and admitted to the underlying facts as presented by the government at the time of his plea." *Id.*

Similarly, in *United States v. Alvarez–Quintero,* 788 F.Supp. 132 (D.R.I.1992), an alien entered the country before the amendment became effective, but was apprehended after that date. The district court applied the amended Guidelines in sentencing the alien on his guilty plea to being found in the United States.

In *United States v. DiSantillo,* 615 F.2d 128, 135 (3d Cir.1980), the court stated that, in distinguishing between aliens who entered the United States and those found here, "Congress intended a distinction between surreptitious crossing of the United States border and entry at a recognized INS port of entry." *See also United States v. Canals–Jimenez,* 943 F.2d 1284, 1286–89 (11th Cir. 1991) (following *DiSantillo* in concluding that an alien who never entered the United States could not be prosecuted solely under the "found in" clause, since that clause applies only to situations where the defendant is discovered after surreptitious entry).

Although Whittaker reentered the United States through a recognized INS port of entry, he did so surreptitiously. His documentation, although containing his photograph, used a fictitious name. There was,

thus, no way the INS could have identified him as a previously deported alien at the time of his reentry. That is the precise situation Congress sought to cover when, in 1972, it amended the Statute to cover aliens who were found in the United States following their illegal entry. *DiSantillo,* 615 F.2d at 134–36.

The district court correctly applied the amended Guideline in determining Whittaker's sentence.

## III

Whittaker contends that, as applied to his case, section 1326 is unconstitutionally vague. He did not raise this argument in the district court. Assuming, without deciding, that such a constitutional challenge may be made for the first time on appeal, we reject the argument.

"A penal statute is not unconstitutionally vague if it 'define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. McElroy,* 910 F.2d 1016, 1021 (2d Cir.1990) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). Other than in the First Amendment context, vagueness challenges also must be "examined in light of the facts of the case, on an as-applied basis." *Id.* (citations omitted).

Under these standards, the "found in" provision informs an alien who, following deportation after conviction of a felony and without permission of the Attorney General, reenters this country illegally and remains here, that he will be deemed guilty of an offense when he is discovered. As the Third Circuit observed in *DiSantillo,* such aliens "are already aware that they are in violation of the law as evidenced by their surreptitious entry." 615 F.2d at 135. In this context, the phrase "found in" is "synonymous with 'discovered in,'" *Canals–Jimenez,* 943 F.2d at 1287, and is not ambiguous or unconstitutionally vague. The statute informed Whittaker that, if he remained in this country following his illegal

reentry, he would be subject to criminal prosecution when he was "found" here.

## IV

Finally, Whittaker challenges the district court's refusal to depart downwardly from the Guidelines because of his alienage and the alleged double counting resulting from (1) his state conviction affecting both his criminal history and his offense level, and (2) the likelihood of further state punishment for violating his parole—the latter two being situations the Sentencing Commission allegedly did not consider in formulating the Guidelines. *See, e.g., United States v. Campbell,* 967 F.2d 20, 23–25 (2d Cir.1992).

■ A defendant may not appeal from a district court's refusal to depart downwardly unless such refusal reflected the district court's belief that it had no authority to do so. A discretionary refusal to depart downwardly is not appealable. *United States v. Haynes,* 985 F.2d 65, 68 (2d Cir.1993) ("[A] district court's refusal to depart downwardly is not appealable unless the guidelines were misapplied, the court misapprehended its authority or imposed an illegal sentence."); *United States v. Ritchey,* 949 F.2d 61, 63 (2d Cir.1991) (per curiam); *United States v. Richardson,* 923 F.2d 13, 15 (2d Cir.1991) ("A decision not to depart downward from the applicable Guidelines range is not appealable when the Guidelines provision was correctly applied and the sentence is not in violation of the law.").

■ The record shows that the district court denied a downward departure because it concluded that such departure would not be appropriate, not because it concluded it had no authority to depart. Initially, the district court adjourned the sentencing hearing because it was "considering a downward departure." At the next sentencing hearing, however, the court stated:

> I can see no real reason to depart here. The Sentencing Commission must have known that the crime that was committed here would have parole violation implications, and it certainly knew that it would have deportation implications.

The court then sentenced Whittaker to forty-six months imprisonment, explaining that:

> This is the lowest possible sentence under the applicable guideline without a departure for which I cannot articulate and there is not a good reason.

The district court's refusal to depart downwardly reflected an exercise of the court's discretion to determine whether a departure was warranted in the particular case. It is not reviewable on appeal.

The conviction and sentence are affirmed.