USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1667 UNITED STATES, Appellee, v. GERALDO O'CAMPO, A/K/A REYES FAMILIA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ____________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ____________________ Owen S. Walker on brief for appellant. ______________ Donald K. Stern, United States Attorney, and Jeanne M. __________________ ___________ Kempthorne, Assistant United States Attorney, on brief for appellee. __________ ____________________ September 2, 1994 ____________________ Per Curiam. Defendant Geraldo O'Campo, a citizen of the __________ Dominican Republic, was deported to that country in March 1991 after having been convicted of various drug offenses. He thereafter returned to the United States without permission. Upon being apprehended in July 1992, he was indicted on a single count of violating 8 U.S.C. 1326(a) and (b)(2).1 He subsequently pled guilty to this charge and received a prison term of 46 months. Defendant now advances a single challenge to his sentence, arguing that the district court mistakenly concluded it lacked the authority to depart downward in one particular respect. We find no error and therefore affirm. See Loc. R. 27.1. ___ I. At issue is a November 1, 1991 revision to 2L1.2 of the Sentencing Guidelines, which governs the offense here. In its earlier form, this section prescribed a base offense level of 8, provided for a 4-level increase "[i]f the defendant previously was deported after sustaining a ____________________ 1. This statute provides in pertinent part as follows: (a) [A]ny alien who-- (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States ... [and] (b) ... (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, ... shall be fined under [Title 18], imprisoned not more than 15 years, or both. -2- conviction for a felony," and stated that "an upward departure may be warranted" where the earlier conviction had consisted of an aggravated felony. U.S.S.G. 2L1.2 & comment. (n.3) (Nov. 1990). The revised version provides for a mandatory 16-level enhancement in all such aggravated felony cases. U.S.S.G. 2L1.2(b)(2) (Nov. 1991). The amendment thus "converted the discretionary choice whether to increase the penalty for [aggravated felons] to a requirement, by instructing the court to add 16 points to the calculation of their total offense level." United States v. _____________ Rodriguez, 26 F.3d 4, 7 (1st Cir. 1994). _________ Defendant's argument for a downward departure hinges on his factual assertion that he reentered the country in August 1991, before this amendment took effect. While not disputing the amendment's applicability per se, he argues that the "real crime" sought to be proscribed by 1326 is the act of reentry. Sent. Tr. at 7. In his view, because he had already returned to this country by the time the amendment took effect, applying the full 16-level enhancement to him-- "without advance warning and without an opportunity to conform his conduct accordingly," Brief at 5--would serve no deterrent value. He concludes that, inasmuch as deterrence was one of the purposes underlying the 1991 amendment, see 18 ___ U.S.C. 3553(a)(2)(B), this circumstance is one that would justify a downward departure. The district court disagreed, -3- holding that it lacked the authority to do so. We review this determination de novo. See, e.g., United States v. ________ ___ ____ ______________ Rivera, 994 F.2d 942, 951 (1st Cir. 1993). ______ II. Even accepting defendant's premise regarding the date of reentry (a matter hardly free of doubt),2 we find his argument unpersuasive for three reasons. First, it runs contrary to our recent decision in United States v. Smith, 14 _____________ _____ F.3d 662 (1st Cir. 1994). The INS there had erroneously advised Smith at the time of deportation that the maximum penalty for unlawful return was two years of imprisonment ____________________ 2. While defendant told the probation office that he had reentered the country in August 1991, he had earlier submitted a sworn statement to INS officials indicating that he had returned in February 1992. At sentencing, defendant insisted this latter statement was the result of a misunderstanding (apparently due to his lack of facility with the English language), and requested the opportunity to establish, through the testimony of himself and his wife, that the August 1991 date was the correct one. Without addressing this request, the court announced a contrary finding. After first indicating that it lacked the authority to depart downward, it stated: I am not moreover persuaded that he did in fact arrive in August of '91. He did tell I.N.S. he arrived in February [1992], and given that fact, I will not depart. Sent. Tr. at 28. Yet when defendant thereafter renewed his request to present evidence supporting the August 1991 date, id. at 32, the court mentioned only its perceived lack of ___ discretion to undertake a departure, id. at 35. ___ To the extent the court intended to rest its decision in the alternative on this factual finding, of course, a separate basis for affirmance would exist. Given the modicum of ambiguity in the record, however, we think it preferable to address defendant's legal argument on the merits. -4- (rather than fifteen years). Smith argued that, because he had relied on this notice in deciding to return, he was entitled to a downward departure. We agreed with the lower court that this was not the kind of circumstance that would justify such a departure. A contrary conclusion would have "countenance[d] Smith's purposeful decision to engage in felonious conduct," in derogation of the goals of deterrence and promoting respect for the law. Id. at 666; accord United ___ ______ ______ States v. Ullyses-Salazar, ___ F.3d ___, 1994 WL 267956, at ______ _______________ *3 to *4 (9th Cir. June 20, 1994). So here, defendant is seeking "the benefit of a downward departure [simply] because [he] understood the penalty he would face to be relatively minor." Smith, 14 F.3d at 666. _____ As a related matter, defendant overlooks the fact that the former version of 2L1.2 encouraged upward departures in cases of aggravated felons. Even under that version, therefore, defendant could have received a sentence at least approximating the one imposed here. See United States v. ___ ______________ Campbell, 967 F.2d 20, 27 (2d Cir. 1992) (relying in part on ________ the subsequently enacted 16-level enhancement in order to find size of such an upward departure reasonable). Cf. ___ United States v. Aymelek, 926 F.2d 64, 71 (1st Cir. 1991) _____________ _______ (upholding upward departure imposed to take account of the "lag time" between the increased statutory penalties in 1326 and "the corresponding update of the guidelines"). -5- Most important, defendant's focus on the act of reentry is misplaced. As we have recently explained, a deported alien may commit an offense under 1326 on three separate occasions: when he or she (1) "enters" the country, (2) "attempts to enter" the country, or (3) "is at any time found in" the country. See Rodriguez, 26 F.3d at 8; United States ___ _________ _____________ v. Troncoso, 23 F.3d 612, 615 (1st Cir. 1994). Defendant ________ here was indicted for, and pled guilty to, the crime of being "found in" the country following deportation. This is as much a "real crime" (to use defendant's parlance) as are the acts of entry or attempted entry.3 Indeed, 2L1.2 is entitled "Unlawfully Entering or Remaining in the United _____________ States." (Emphasis added). Cf. United States v. Whittaker, ___ _____________ _________ 999 F.2d 38, 42-43 (2d Cir. 1993) ( 1326 adequately "informed [defendant] that, if he remained in this country following his illegal reentry, he would be subject to criminal prosecution when he was 'found' here"). Once the amendment took effect, defendant had the opportunity, and ____________________ 3. For this reason, we held in Rodriguez that applying _________ 2L1.2's 16-level enhancement to an alien who had reentered the country prior to November 1991 but had been "found" thereafter entailed no ex post facto violation. 26 F.3d at ______________ 7-8; accord, e.g., United States v. Whittaker, 999 F.2d 38, ______ ____ _____________ _________ 40-42 (2d Cir. 1993); United States v. Gonzales, 988 F.2d 16, _____________ ________ 18 (5th Cir.), cert. denied, 114 S. Ct. 170 (1993). On the ____________ same rationale, we held in Troncoso that no ex post facto ________ ______________ difficulties arose from applying the increased penalties in 1326(b)(2) to one who had reentered prior to their enactment but been found thereafter. 23 F.3d at 615. -6- should have had an increased incentive, to "conform his conduct accordingly" by departing from the country. For these reasons, we agree with the lower court that the circumstances here are not of a kind that would warrant a downward departure. Cf. United States v. Polanco, ___ F.3d ___ _____________ _______ ___, ___ n.3, 1994 WL 361092 (2d Cir. July 12, 1994) (noting in 2L1.2(b)(2) case, involving defendant who had reentered the country in 1990 and been discovered in 1992, that "the Guidelines more than adequately account for the circumstances underlying the offense conduct here"); United States v. Maul- _____________ _____ Valverde, 10 F.3d 544, 546-47 (8th Cir. 1993) (invalidating ________ downward departure imposed by lower court in 2L1.2(b)(2) case because of age of aggravated felony, while recognizing that departure in either direction may be appropriate in "unusual" case). Affirmed. _________ -7-