**Climaco ARROYO–ANGULO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civil Action No. 96–1576.
Criminal No. 92–646.

United States District Court,
D. New Jersey.

April 10, 1997.

---

Climaco Arroyo–Angulo, Milan, MI, pro se.

Mary Futcher, Assistant U.S. Attorney U.S. Dept. of Justice, Camden, NJ, for Respondent.

## OPINION

WOLIN, District Judge

*Pro se* petitioner Climaco Arroyo–Angulo ("Arroyo–Angulo") brought this action pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1]  Petitioner contends that he was denied effective assistance of counsel and that this Court erred in calculating his sentence.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court has decided the motion based on the written submissions of the parties.  For the reasons stated below, petitioner's motion will be denied.

## BACKGROUND

The Court has reviewed petitioner's record of conviction.  From this record, the Court gleans the following factual information.  Arroyo–Angulo is a citizen of Colombia, South America.  In 1973, petitioner unlawfully entered the United States.  Later that year, the United States Immigration and Naturalization Service ("INS") captured and deported him.  Petitioner unlawfully reentered the United States in 1974.  Again, the INS captured and deported him.

In 1976, Arroyo–Angulo was arrested in San Francisco, California when he applied

---

1.  28 U.S.C. § 2255 provides in relevant part: "A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move to vacate, set aside or correct the sentence."

for a passport under a fictitious name. After serving 90 days in jail, the INS deported him for the third time on September 29, 1977.

Subsequently, petitioner was caught hiding on a ship arriving in New York. Once again, petitioner was arrested and charged with unlawful entry into the United States. The District Court, Eastern District of New York sentenced petitioner to one year imprisonment. Following this sentence, petitioner was taken into custody by the INS. Later, upon marriage to a United States citizen, the INS released Arroyo–Angulo on bond.

While on bond, petitioner was arrested for making false statements on a passport application. After entering a guilty plea, the Court sentenced Arroyo–Angulo to three years confinement at Levenworth Honor Camp ("Levenworth").

Arroyo-Angulo escaped from Levenworth on October 31, 1981. Petitioner remained at large until March 22, 1985 when he was arrested for cocaine distribution in Seattle, Washington. Arroyo–Angulo plead guilty, and the District Court of Kansas sentenced him to six years confinement, including one year to be served concurrently for the escape from Levenworth. At the conclusion of this sentence, Arroyo–Angulo was released to INS officials who deported him for the fourth time on January 8, 1991.

Ever the slow learner, Arroyo–Angulo reentered the United States sometime between January, 1991 and June 15, 1992. See Stipulation ¶ 6. On June 15, 1992, petitioner was arrested and charged with conspiracy to violate the Comprehensive Drug Reform Act, in violation of New Jersey Statute Section 2C:5-2. When arrested, Arroyo–Angulo identified himself as Samuel DeLeon. A fingerprint comparison revealed his true identity.

The United States filed a criminal complaint against Arroyo–Angulo, charging him with violating 8 U.S.C. § 1326(a)(2), Reentry of A Deported Alien.[2] The government offered Arroyo–Angulo a plea agreement. Initially, petitioner rejected the plea agreement, forcing the government to prepare for trial.

Two days before trial, however, Arroyo–Angulo consented to a stipulated trial and plead guilty.

At sentencing, the Court placed petitioner in Total Offense Level 22 and Criminal History Category V. As such, the United States Sentencing Guidelines (the "Guidelines") provided a sentencing range of 77 to 96 months. Largely due to petitioner's prior criminal conduct, this Court imposed the maximum term, 96 months.

Arroyo-Angulo now moves to modify this Court's sentence, claiming that he was denied effective assistance of counsel. Specifically, Arroyo–Angulo challenges his counsel's: (1) failure to object to the Court's use of the 1991 version of the Guidelines; (2) failure to ask for a downward departure under 18 U.S.C. § 3553(a); and (3) recommendation to proceed with a stipulated trial in lieu of a guilty plea.

## DISCUSSION

### I. General

As an initial matter, the Court recognizes that petitioner's *pro se* petition must be read liberally. *See Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982); *Todaro v. Bowman,* 872 F.2d 43, 44 n. 1 (3d Cir.1989). Despite the Court's liberal reading, the Court concludes that petitioner has not offered any sound basis on which to grant his motion; therefore, petitioner's motion will be denied.

### II. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, petitioner must demonstrate: (1) deficient performance as a matter of constitutional law; and (2) prejudice from this deficient performance. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984); *see also McNeil v. Cuyler,* 782 F.2d 443, 447–49 (3d. Cir.), *cert. denied,* 479 U.S. 1010, 107 S.Ct. 654, 93 L.Ed.2d 709 (1986). A constitutionally deficient performance is one that falls "outside the wide range of professionally

---

**2.** Pursuant to 8 U.S.C. § 1326(a)(2), it is a felony for an alien who has been deported to enter, attempt to enter, or be anytime found in, the United States without the prior consent of the Attorney General.

competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Prejudice from deficient performance is shown where: "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The burden of proof rests with petitioner. *See McNeil,* 782 F.2d at 448. Thus, if petitioner does not prove both elements of this test—deficient performance and prejudice—this Court must dismiss his petition. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70.

### a. Proper Version of Guidelines

At sentencing, this Court followed the 1991 version of the Guidelines. Petitioner claims this was error, arguing that the 1990 Guidelines should have been used. Petr's Br. at 4. The 1990 Guidelines impose a four-level increase to a defendant's base offense level where "the defendant previously was deported after sustaining a conviction for a felony." *See* U.S. Sentencing Guidelines Manual § 2L1.2 (1990). This version took effect November 1, 1990.

The 1991 Guidelines impose a stiffer penalty. This version requires a sixteen level increase where "the defendant previously was deported after a conviction for an aggravated felony...." *See* U.S. Sentencing Guidelines Manual § 2L1.2 (b)(2) (1991). This version took effect November 1, 1991. Because of this difference, petitioner claims that he erroneously received an additional twelve point increase in his offense level.

To support this claim, petitioner asserts that he committed the crime of unlawful entry on February 20, 1991, the date he actually reentered the United States. Under petitioner's view, the Court should have applied the Guidelines in effect on that date (the 1990 Guidelines), rather than those in effect at the time of his arrest (the 1991 Guidelines).

Petitioner further argues that the application of the 1991 Guidelines to a crime committed on February 20, 1991 constitutes a violation of the ex post facto clause. Petitioner notes that an application of the 1990 Guidelines would decrease his offense level by twelve levels, thereby significantly reducing his sentence. Furthermore, petitioner claims that the failure of his counsel to argue this point amounted to ineffective assistance.

■ Petitioner's claim will be denied because his sentence does not implicate the ex post facto clause. Although petitioner first violated 8 U.S.C. § 1326 on February 20, 1991, when he unlawfully reentered the United States, he continued to commit this offense until he was "found" by INS agents in the United States; petitioner violated the law each day he remained in the United States undiscovered. Faced with similar facts, the Fifth Circuit held:

> The clear language in 8 U.S.C. Section 1326(a)(2) provides *three separate occasions upon which a deported alien may commit the offense:* 1) when one illegally enters the United States; 2) attempts to illegally enter the United States;. or 3) *when a deported alien is found at any time in the United States.* The plain words of the statute set out discrete points in time when the crime may be committed.

*United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.) (holding that the offense of illegal entry was committed not only when the petitioner first unlawfully entered the country, but at the time INS agents discovered the petitioner) (emphasis added), *cert. denied,* 510 U.S. 858, 114 S.Ct. 170, 126 L.Ed.2d 129 (1993).

Under similar circumstances, the Ninth Circuit held: "A violation of 8 U.S.C § 1326 for being found in the United States after a prior deportation is a *continuing offense* which *continues so long as the alien remains in the country.*" *United States v. Guzman–Bruno,* 27 F.3d 420, 422–23 (9th Cir.) (emphasis added), *cert. denied,* 513 U.S. 975, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994). Thus, the court concluded: "[P]resence at any time subsequent to reentry is a crime subject to the penalties then in effect." *Id.* at 423.

■ In what appears to be an issue of first impression in the Third Circuit and this District, the Court agrees with the Fifth, Ninth and other Circuits that have established the three instances when an individual violates

section 1326.[3] *See, e.g., Gonzales,* 988 F.2d at 18. Here, petitioner unlawfully reentered the United States on February 20, 1991; his offense, however, continued until the INS obtained a warrant for his arrest on July 13, 1992, well after the effective date of the 1991 Guidelines. On this date, petitioner was "found" in the United States and was in violation of section 1326. Accordingly, under the 1991 Guidelines, the Court correctly enhanced petitioner's base offense level sixteen levels.

Moreover, because the correct Guidelines were used, petitioner's counsel did not engage in constitutionally deficient performance. Petitioner's ineffective assistance of counsel claim with respect to this point is, therefore, baseless.

#### b. Failure to Request Downward Departure

■ Petitioner next argues that his counsel's failure to request a downward departure under 18 U.S.C. § 3553(a) amounted to ineffective assistance of counsel. Sentencing courts are authorized to depart from the Guidelines where:

> [T]here exists an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b). Petitioner relies on *United States v. Smith,* 27 F.3d 649 (D.C.Cir. 1994), for the proposition that the Court should consider deportable alien status for purposes of downward departure. This claim fails for two independent reasons.

First, *Smith* can be distinguished from the instant case. In *Smith,* the defendant's deportable status did not relate to the crime with which he was charged. Smith was charged with possession of cocaine with intent to distribute, not illegal entry. Unlike here, the issue in *Smith* was whether section 3553(a) reaches offender characteristics not related to culpability.

Perhaps more importantly, petitioner's claim fails because the *Smith* decision was carefully limited. The *Smith* Court explained:

> We do not mean to suggest that a departure is in order whenever a factor unrelated to a prisoner's just deserts may affect the severity of his confinement. For a departure on such a basis to be reasonable the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence ... [E]ven a court confident that the status will lead to worse conditions should ‧depart *only when persuaded that the greater severity is undeserved.* Thus the court will fulfill the Guidelines' demand that such departures will be 'highly infrequent.'

*Id.* at 655 (citing U.S. Sentencing Guidelines Manual § 4(b)) (emphasis added).

In the case · at bar, counsel's failure to argue for downward departure under 18 U.S.C. § 3553(a) was within the bounds of reasonable effective . assistance. The argument for a downward departure under section 3553(a) was tenuous at best, and petitioner would not have prevailed. Given the limits imposed by *Smith* and the Guidelines, there was no reason to depart downward.

#### c. Stipulated Trial

■ Petitioner next claims that he was denied effective assistance of counsel because

---

**3.** Besides the Fifth and Ninth Circuits, several other circuits have agreed with this position. *Accord United States v. Gomez,* 38 F.3d 1031, 1033–34 (8th Cir.1994) ("This offense may be committed in three distinct manners: a previously deported alien may violate § 1326 by ... (1) entering, (2) attempting to enter, or (3) being found in the United States."); *United States v. Rodriguez,* 26 F.3d 4, 8 (1st Cir.1994) ("[W]e think it plain that 'enters,' 'attempts to enter,' and 'is at any time found in' describe three separate occasions on which a deported alien can violate Section 1326."); *United States v. Whittaker,* 999 F.2d 38, 42 (2d Cir.1993) ("[T]he 'found in' provision informs an alien who, following deportation after conviction of a felony and without permission of the Attorney General, reenters this country illegally and remains here, that he will be deemed guilty of an offense when he is discovered."). Additionally, another District Court in this Circuit has ruled the same way. *See United States v. Disla–Montano,* No. 92–00605, 1993 WL 541701, at *2 (E.D.Pa. Jan. 3, 1994).

his attorney recommended a stipulated trial rather than a guilty plea. Specifically, petitioner claims that this advice caused him the loss of an additional one-level reduction for acceptance of responsibility. Petitioner, however, misunderstands why this Court denied him the additional one-level reduction.

The Guidelines allow for an additional one-level reduction for a defendant with an offense level of sixteen or greater who cooperates with prosecution by:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

U.S. Sentencing Guidelines § 3E1.1 (1991). Petitioner in this case was denied this additional point because he did not satisfy the requirements of this provision. Petitioner failed to timely notify the government that he would consent to a stipulated trial. The government furnished Arroyo–Angulo with a plea agreement which he never accepted. Instead, petitioner filed motions and considered raising a defense at trial. As a result, the government began to prepare for trial. Indeed, it was not until two days before trial that petitioner indicated he would consent to a stipulated trial.

The Court concludes that petitioner's stipulated trial did not preclude him from the additional one-level reduction; rather, petitioner simply lingered too long before consenting to a stipulated trial. Moreover, because the decision to proceed with a stipulated trial did not cause the loss of this additional point reduction, petitioner's counsel did not provide constitutionally deficient assistance. Indeed, the counsel's advice may have been wise to the extent that it preserved certain issues for appeal.

### CONCLUSION

For the reasons set forth herein, the Court concludes that petitioner's sentence was correct and that petitioner received constitutionally adequate counsel. Accordingly, petition-

er's *pro se* motion to vacate, set aside, or correct his sentence will be denied.

An appropriate Order is attached.

### *ORDER*

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 10th day of April, 1997

ORDERED that the motion of petitioner Climaco Arroyo–Angulo to vacate, set aside, or correct his sentence is be denied.