UNITED STATES

v.

Rafael MEDRANO, Defendant.

No. 99–CR–322 (ARR).

United States District Court,
E.D. New York.

March 1, 2000.

resolved in this Circuit, about the intersection of 18 U.S.C. § 3584(a), the statute governing the imposition of a sentence on a defendant subject to an undischarged term of imprisonment, 1998 Sentencing Guideline § 5G1.3, the guideline promulgated to effectuate the statutory directive, and 8 U.S.C. § 1326, the illegal reentry statute that the defendant in this case has violated. For the reasons discussed below, I conclude that I am authorized to depart downwardly from the sentence otherwise directed by the Guidelines. Further, I find that such a departure is warranted in the circumstances of this case.

## FACTUAL BACKGROUND

The defendant, Rafael Medrano, is a citizen of the Dominican Republic who has lived at times with his mother in Queens, New York. Between 1982 and 1988, Medrano was convicted of various crimes, including robbery and criminal sale of marijuana, in Criminal Court and Supreme Court, Queens County. On October 25, 1990, Medrano was deported for having violated § 241(a)(11) of the Immigration and Nationality Act based on a July 15, 1986 conviction for attempted criminal possession of a controlled sentence.

Medrano reportedly returned to the United States in 1993. On March 10, 1995, Medrano, then using the name Tony Ramon, was convicted in Criminal Court, Queens County, for criminal sale of a controlled substance, namely, the sale of 1.2 grains of cocaine. Medrano was sentenced to six years in custody and incarcerated in Downstate Correctional Facility in Fishkill, New York.

Shortly thereafter, on March 31, 1995, the Immigration and Naturalization Service (INS) interviewed Medrano during a routine screening of inmates at the prison. Medrano revealed to the INS his actual name and truthfully informed the INS that he had been deported. Twenty-one months later, on December 23, 1996, a complaint was filed in this court charging

Mildred M. Whalen, Federal Defender Division, Brooklyn, NY, for Defendant.

Jonathan E. Davis, Assistant United States Attorney, Brooklyn, NY, for U.S.

## OPINION AND ORDER

ROSS, District Judge.

In this case, the defendant, convicted of being found in the United States after having previously been arrested and deported from the country, in violation of 8 U.S.C. § 1326(a), requests a downward departure on the ground that a four year delay in this prosecution precluded the possibility of his serving a sentence for this offense partially or fully concurrently with his service of a state prison sentence. The issue raises complicated questions, un-

that Medrano "did enter, attempt to enter, and was found in the United States" after having been deported subsequent to a conviction for the commission of an aggravated felony. It was not until March 15, 1999, however, after Medrano had concluded service of his state sentence, that he was writted into federal custody to face prosecution on the charge in the outstanding complaint.

On April 13, 1999, Medrano waived his right to indictment by a grand jury and entered a plea of guilty to a one count information charging that between September 17, 1994, and March 19, 1999, the defendant, having previously been arrested and deported from the United States, was found in the United States without the permission of the Attorney General, in violation of 8 U.S.C. § 1326(a) and 1326(b)(2).

In the Presentence Report and Addenda, the Probation Department calculates an offense level of 21 and a criminal history category of VI, resulting in a range of imprisonment of 77 to 96 months. In letters to the court dated November 3, 1999 and December 21, 1999, Medrano seeks a downward departure from this guideline sentence, arguing that it should be adjusted to accommodate his contention that if he had been prosecuted immediately or within a reasonable time after the INS discovered his illegal presence in the United States, I could and would have ordered his sentence to run wholly or partially concurrently with his state sentence. The government opposes this request.

## DISCUSSION

The application of the Sentencing Guidelines to the requested downward departure in this case requires analysis of the interplay among 18 U.S.C. § 3584(a) 1998 U.S.S.G. § 5G1.3, and the Illegal Reentry statute, 8 U.S.C. § 1326. The defendant contends that a downward departure is warranted to the extent that I could have, and would have, sentenced Medrano concurrently with his state sentence if the federal prosecution had been initiated im-

mediately or reasonably promptly after the INS discovered Medrano's illegal presence here. Medrano makes a two-step argument: First, he contends that had he been prosecuted federally while still serving his state sentence, I would have had discretion to impose a fully or partially concurrent sentence either directly under § 5G1.3(c), which expressly authorizes such a sentence, or by departing downwardly from a sentence under § 5G1.3(a), which otherwise mandates a consecutive sentence. Second, Medrano contends that because his sentence could thus have been imposed fully or partially concurrently with his state sentence, the four year delay between the INS's discovery of his illegal presence in the United States and the initiation of federal prosecution justifies a downward departure, notwithstanding that he has now completed service of his state sentence. I address these contentions in turn.

## I. The application of U.S.S.G. § 5G1.3 to the offense of "being found" in the United States after being deported

Section 3584(a) of Title 18 of the United States Code provides that a district court has discretion, predicated on the consideration of factors listed in 18 U.S.C. § 3553(a), to impose a concurrent or a consecutive sentence on a defendant who is already subject to an undischarged term of imprisonment. Sentencing Guideline § 5G1.3 provides guidance to the district court in exercising this discretion. If Medrano had been prosecuted when the INS discovered his illegal presence in the United States—and thus while he remained subject to a portion of his state sentence— the federal sentence would have been governed by 18 U.S.C. § 3584(a) and U.S.S.G. § 5G1.3.

Section 5G1.3(a) provides that if the instant offense was committed "while the defendant was serving a term of imprisonment (including work release, furlough, or escape status)," the sentence for the in-

stant offense "*shall* be imposed to run consecutively to the undischarged term of imprisonment" (emphasis added). Section 5G1.3(b) provides that if subsection (a) does not apply and the undischarged term resulted from offenses that have been fully taken into account in the determination of the offense level, the instant sentence "*shall* be imposed to run concurrently to the undischarged term of imprisonment" (emphasis added). Section 5G1.3(c), labeled a policy statement, provides that in any other case, the district court may impose the sentence consecutively, concurrently, or partially concurrently to "achieve a reasonable punishment for the instant offense."

The government contends that even if Medrano had been prosecuted while serving his state sentence, his federal sentence would have been governed by subsection (a) because the INS "found" Medrano while he was serving his state sentence. Medrano contends, by contrast, that the sentence would have been governed by subsection (c), permitting a wholly or partially concurrent sentence, because Medrano committed all of the elements of *his* conduct relating to the offense—namely the initial illegal reentry and the subsequent remaining in the country—before he was incarcerated. Alternatively, Medrano contends that even if subsection (a) would have applied, I would nonetheless have been authorized to depart downwardly, as long as the factors set forth in 18 U.S.C. § 3553(a) were satisfied. To determine which subsection would have applied, I must first determine *when* Medrano committed the offense of "being found" illegally in the United States.

Section 1326(a) provides that any previously deported alien who "enters, attempts to enter, or is at any time found in, the United States" shall be fined or imprisoned or both. 8 U.S.C. § 1326(a). A defendant is often charged with both illegal reentry and being found in the country. *See, e.g., United States v. Whittaker,* 999

F.2d 38, 41 (2d Cir.1993). The plain language of the statute, however, provides:

"*three separate occasions* upon which a previously deported alien may commit the offense: 1) when one illegally enters the United States; 2) attempts to illegally enter the United States; or 3) when a deported alien is found at any time in the United States. The plain words of the statute set out discrete points in time when the crime may be committed."

*Whittaker,* 999 F.2d at 42 (quoting *United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.1993)) (emphasis added); *see also United States v. Rivera–Ventura,* 72 F.3d 277, 281 (2d Cir.1995).

The offenses of illegal reentry and attempted reentry are typically complete as soon as the entry or attempt is made. *See Rivera–Ventura,* 72 F.3d at 281. Thus, an alien charged with illegal reentry—even if found while serving a state sentence—is sentenced under § 5G1.3(c). *See United States v. Maria,* 186 F.3d 65, 69 & n. 3 (2d Cir.1999); *United States v. Sanchez–Rodriguez,* 161 F.3d 556, 564 (9th Cir.1998) (en banc).

The offense of "being found" in the United States is more complicated to place temporally because it depends "not only on the conduct of the alien but also on acts and knowledge of the federal authorities." *Rivera–Ventura,* 72 F.3d at 281. Almost all courts that have addressed the timing of this offense have done so in one of two contexts: either in assessing the running of the statute of limitations or in determining the appropriate version of the Sentencing Guidelines to apply in a particular case.

In considering when the statute of limitations for the offense begins to run, this Circuit has declared that the offense is deemed "complete" at the time when the authorities both discover the illegal alien in the United States and know, or with reasonable diligence could have discovered, that his presence was illegal. *See Rivera–*

*Ventura,* 72 F.3d at 281; *see also United States v. Santana–Castellano,* 74 F.3d 593, 598 (5th Cir.1996); *United States v. Gomez,* 38 F.3d 1031, 1037 (8th Cir.1994); *cf. United States v. DiSantillo,* 615 F.2d 128, 135–36 (3rd Cir.1980) (where alien openly entered through recognized entry port, statute of limitations began to run upon entry). Thus, because the statute provides that being found in the United States is a separate and distinct offense from illegally reentering the United States, the government may prosecute a defendant charged with being found any time within five years of the government's discovery of the defendant's illegal presence, even if more than five years have elapsed since the defendant's reentry.

■ This Circuit and other courts of appeals have faced a similar question in determining which version of the Sentencing Guidelines should be applied in the sentencing of defendants who are illegally found within the country. Typically, defendants are punished in accordance with the Guidelines in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4). However, a sentence may not be based on an amendment that became effective after an offense occurred if it results in a harsher punishment than the Guidelines in effect when the offense occurred. *See, e.g., United States v. Martinez–Rios,* 143 F.3d 662, 670 (2d Cir.1998). In *Whittaker,* the defendant plead guilty to illegally entering the country and to being found in the country after being deported. The district court sentenced the defendant under the Guidelines in effect at the time the INS arrested the defendant, which called for a longer sentence than that which would have been imposed under the Guidelines in effect at the time that the defendant entered the country. Relying in part on the Third Circuit's opinion in *DiSantillo,* a case addressing the commencement of the limitations period, the panel held that the offense of "being found" was not complete until the government learned of the defendant's illegal presence, and thus that the district court had properly sentenced the defendant under the amended Guidelines in effect at the later time. *See Whittaker,* 999 F.2d at 41–43; *see also United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.1993); *United States v. Rodriguez,* 26 F.3d 4, 8 (1st Cir.1994) (both holding that a defendant may be sentenced according to the Guidelines in effect at the time his illegal presence is discovered by the government without raising ex post facto problems because the offense is not complete until the defendant is "found"). In sum, courts determining when the offense of "being found" occurs in the contexts of deciding when the statute of limitations begins to run and which version of the Sentencing Guidelines applies have held without exception that the offense of "being found" is not complete until immigration authorities have actual or constructive knowledge of the illegal presence of the defendant.

■ I have located no case that decides the precise question posed here, namely, when the offense of "being found" occurs for the purposes of sentencing under § 5G1.3.[1] The INS first learned of Medrano's illegal presence in the United States

---

1. In *Santana–Castellano,* the Fifth Circuit considered an appeal by a defendant who, like Medrano, was "found" illegally in the United States while serving a state prison sentence. 74 F.3d at 595–96. The district court ordered consecutive sentences under § 5G1.3(a). *See id.* at 596. The defendant contended that the sentence should have been governed by subsection (c). The defendant also challenged the district court's application of U.S.S.G. § 4A1.1(d), which provides for a two-point enhancement of the criminal history category if the defendant committed the instant offense while under any criminal justice sentence. Following the case law developed in reference to the timing of the offense for the purposes of applying the statute of limitations and the appropriate version of the Guidelines, the panel concluded that for § 4A1.1(d) purposes, the offense was "complete" when the INS discovered the defendant in the state prison. *See id.* at 598. The panel declined to rule definitively on which subsection of § 5G1.3 was appropriate. *See id.* at 599.

when he truthfully informed INS interviewers that he had been deported and that he had reentered the country under an assumed name. Medrano argues, however, that because he completed all of the elements of *his* conduct relating to the offense before he was incarcerated, his offense should not be deemed to have occurred while he was serving his state sentence. The defendant's argument is not without logical appeal. Nevertheless, as noted above, courts considering when the offense of "being found" in the United States occurs for purposes of applying the statute of limitations and changes in the Guidelines have been unanimous in holding that the statute is not violated until the defendant is in fact (or should have been) found. I can discern no principled basis for distinguishing the time that the offense occurs for the purposes of applying § 5G1.3 from the cases discussed above. Thus, I conclude that Medrano's violation of § 1326 did not occur until the INS found Medrano in jail.

Because Medrano committed the instant offense while serving his state sentence, Sentencing Guideline § 5G1.3(a) would have applied to his case had he been prosecuted while he remained subject to that sentence. This does not end the analysis, however, as it must still be determined whether I would have been authorized to depart downwardly from the Guideline notwithstanding the application of subsection (a), as well as whether the four year delay in prosecution, which renders both subsections inapposite, merits a downward departure.

## II. Discretion to depart downwardly when a sentence is governed by § 5G1.3(a)

The Sentencing Act that enables the Guidelines provides that a term of imprisonment imposed upon a defendant who is already subject to an undischarged term of imprisonment "may run concurrently or consecutively." 18 U.S.C. § 3584(a). The statute goes on to provide that the court, "in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider . . . the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b). Section 3553 is the general instruction on the imposition of the sentence, and it lists the entire range of factors that a judge must consider in setting a sentence, including both the applicable guidelines and the need to avoid unwarranted sentence disparities.

■ The mandatory language in Sentencing Guideline § 5G1.3(a), identifying circumstances in which a fully consecutive sentence is *required*, seems to conflict with the discretion afforded by statute to impose a consecutive or concurrent sentence. The Second Circuit has yet to decide definitively what effect § 5G1.3(a) has on the sentencing judge's discretion to order concurrent sentences pursuant to § 3584(a). *See United States v. Whiteley,* 54 F.3d 85, 89 n. 2 (2d Cir.1995).[2] Most other courts of appeals faced with the question have determined that § 5G1.3(a) (or its precursor) is properly understood as creating a "presumption" in favor of a consecutive sentence which controls *unless* the court may properly depart downwardly under the procedures set forth in 18 U.S.C. § 3553(c)(2). *See United States v. Schae-*

**2.** In considering the "analogous issue" of whether the discretion authorized by § 3584 permits a district court to decline to impose consecutive sentences under the rules set forth in U.S.S.G. § 5G1.2 (governing sentencing on multiple counts of conviction), the Second Circuit has held that a court has discretion to sentence concurrently only if the standards for a departure are met. *United States v. Rahman,* 189 F.3d 88, 156–57 & n. 35 (2d Cir.1999), *cert. denied sub nom. No-*

*sair v. United States,* —— U.S. ——, 120 S.Ct. 439, 145 L.Ed.2d 344 (1999) *and sub nom. Abdel Rahman v. United States,* —— U.S. ——, 120 S.Ct. 830, 145 L.Ed.2d 698 (2000). *See also United States v. Barber,* 201 F.3d 433, 1999 WL 1314738 (2d Cir.1999) (unpublished table decision) (citing *Rahman* for the proposition that "§ 5G1.3[a] permits concurrent sentences only where a departure is appropriate").

*fer,* 107 F.3d 1280, 1285 (7th Cir.1997), *cert. denied* 522 U.S. 1052, 118 S.Ct. 701, 139 L.Ed.2d 645 (1998); *United States v. Flowers,* 995 F.2d 315, 316–17 (1st Cir. 1993); *United States v. Gullickson,* 981 F.2d 344, 349 (8th Cir.1992); *United States v. Shewmaker,* 936 F.2d 1124, 1128 (10th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Pedrioli,* 931 F.2d 31, 32 (9th Cir.1991); *United States v. Stewart,* 917 F.2d 970, 973 (6th Cir.1990); *United States v. Miller,* 903 F.2d 341, 349 (5th Cir.1990); *United States v. Rogers,* 897 F.2d 134, 137 (4th Cir.1990); *United States v. Fossett,* 881 F.2d 976 (11th Cir.1989); *see also United States v. Higgins,* 128 F.3d 138, 141–43 & n. 5 (3rd Cir.1997) (overruling earlier holding that precursor of U.S.S.G. § 5G1.3 conflicted with § 3584(a) and suggesting, but not deciding, that it would follow other circuits' approach to downward departures). The sentencing court thus retains the discretion to impose a fully or partially concurrent sentence provided the judge can articulate a specific reason why a departure from the rule set forth in § 5G1.3(a) is appropriate.

▆▆▆ The district court may properly impose a sentence outside the range established by the applicable guidelines if the court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see also* 1998 U.S.S.G. § 5K2.0; *Koon v. United States,* 518 U.S. 81, 92–93, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996).

It is inappropriate for a court to grant a departure because of a factor that was specifically considered by the Commission; likewise, a court may not depart simply because it feels that the sentence prescribed by the relevant guideline is too severe. *See United States v. Labeille–Soto,* 163 F.3d 93, 100–01 (2d Cir.1998). On the other hand, the Commission recognizes that there remains the atypical case where a particular guideline "linguistically applies", 1998 U.S.S.G. ch. 1, pt. A, intro. comment 4(b), but where departure may be appropriate to achieve the Guidelines' objective of avoiding "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

In this case, as discussed above, the defendant was "found" by the INS while in prison and thus § 5G1.3(a) "linguistically applies." However, the vast majority of crimes to which subsection (a) applies—which define the heartland of the guideline—are those offenses actively committed by a defendant while incarcerated. *See, e.g., United States v. Jones,* 195 F.3d 379 (8th Cir.1999) (participating in drug conspiracy while on parole);[3] *United States v. Melgar–Galvez,* 161 F.3d 1122 (7th Cir.1998) (assaulting corrections officer while in jail); *United States v. Higgins,* 128 F.3d 138 (3rd Cir.1997) (conspiring to mail threatening communication while in jail).[4] In each of these cases, the defendant, already under a criminal justice sentence for one crime, actively chose to engage in another. In Medrano's case, by contrast, the defendant had already committed all of the elements of the crime

---

**3.** The Second Circuit has concluded that offenses committed while on parole are governed by § 5G1.3(c). *See United States v. Maria,* 186 F.3d 65 (2d Cir.1999) (illegally reentering country while on parole is governed by subsection (c)).

**4.** *See also United States v. Sours,* 173 F.3d 865, 1999 WL 241839 (10th Cir.1999) (unpublished table decision) (committing robbery while on escape status), *cert. denied,* —— U.S.

——, 120 S.Ct. 238, 145 L.Ed.2d 200 (1999); *United States v. Crosby,* 139 F.3d 893, 1998 WL 165788 (4th Cir.1998) (unpublished table decision) (soliciting murder of probation officer while in jail), *cert. denied,* 525 U.S. 987, 119 S.Ct. 456, 142 L.Ed.2d 409 (1998); *United States v. Sadler,* 165 F.3d 29, 1998 WL 681256 (6th Cir.1998) (unpublished table decision) (participating in conspiracy to use unauthorized credit card numbers while in jail).

before he was convicted and incarcerated for the state offense. (In fact, his incarceration necessarily meant that he remained in the country illegally.) Medrano's being "found" while in jail was not the result of any conduct committed by *him* while in jail. This distinction is significant, taking the circumstances presented in this case out of the heartland of the guideline.

Comparing the defendant's conduct to similar conduct by others violating the identical statute likewise illustrates the appropriateness of a departure. An individual found while in jail but charged with illegal reentry—rather than with "being found"—would be, and routinely is, eligible for a concurrent sentence under subsection (c). *See United States v. Sanchez–Rodriguez*, 161 F.3d 556, 564 (9th Cir.1998) (en banc) (defendant found by the INS while being prosecuted for unrelated state crime and charged with illegal reentry while serving state prison sentence properly sentenced under subsection (c)); *see also United States v. Maria*, 186 F.3d 65, 69 & n. 3 (2d Cir.1999) (defendant charged with illegal reentry when arrested for assault properly sentenced under subsection (c)). Significantly, too, a defendant convicted of the same offense, that of "being found," whose illegal presence was discovered by the government before the defendant was incarcerated would also be eligible for a concurrent sentence under subsection (c). Almost always, a defendant who is found illegally present in the United States after having been deported has also entered illegally. Thus, the literal application of subsection (a) to the offense of "being found" and of subsection (c) to illegal reentry

means that identical conduct may result in the imposition of radically disparate terms of imprisonment depending solely on the often arbitrary choice whether to charge the defendant with illegal reentry or illegally being found.[5]

■ In sum, not only are Medrano's circumstances atypical of those to whom § 5G1.3(a) generally applies, rendering his situation outside the heartland of that guideline, but the application of subsection (a) to one in Medrano's circumstances would also create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Accordingly, I conclude that had Medrano been sentenced in this case at a time when he was still serving his state sentence, I would have had the discretion to depart downwardly from subsection (a) to impose at least a partially concurrent sentence, such as that authorized by subsection (c).

### III. Delay and lost opportunity

■ Determining that a downward departure would have been appropriate if the defendant had been sentenced pursuant to § 5G1.3(a) does not conclude the analysis in this case. While the INS "found" Medrano in March 1995, the government did not arraign him until March 1999, after he had completed service of his state sentence. Thus, neither subsection of § 5G1.3 is applicable because Medrano is no longer subject to an "undischarged term of imprisonment." *See Labeille–Soto*, 163 F.3d at 99. The defendant does not contend, and there is no evidence to suggest, that the considerable gap between the govern-

5. The terms are used almost interchangeably in the case law. For example, in *United States v. Lainez–Leiva*, 129 F.3d 89 (2d Cir. 1997), the court refers to the defendant as having been "found to be in the United States unlawfully." *Id.* at 90. The district court opinion suggests, however, that the actual charge was illegal reentry. *See United States v. Lainez–Leiva*, 957 F.Supp. 390 (N.D.N.Y. 1997). In fact, the illegal reentry statute was amended to include "being found" to ensure that individuals who surreptitiously enter the country and are subsequently found not escape prosecution simply because the statute of limitations has run. *See Whittaker*, 999 F.2d at 42. The distinction between the offense of "being found" and the offense of illegal reentry is temporal; the defendant's conduct is not substantially distinct. (Of course, in determining whether a downward departure is appropriate, a court could take into consideration a defendant's use of an alias or other attempts to avoid detection.)

ment's discovery of Medrano's illegal presence and its arrest and prosecution of him in this case was a deliberate act of bad faith. Nevertheless, having concluded that the defendant would have been eligible for a downward departure from the consecutive sentence mandated by subsection (a) had he been sentenced while his state sentence was not yet discharged, I also conclude that the four year delay in prosecuting this case—just one year short of the expiration of the statute of limitations—warrants a similar departure here.

The Ninth Circuit en banc recently considered a case in which the district court judge granted a downward departure because an "entirely arbitrary" delay resulted in a "lost opportunity" to serve a greater portion of a federal sentence for illegal reentry concurrently with a state sentence. *See Sanchez–Rodriguez,* 161 F.3d at 564. In affirming the district court's sentence, the majority opinion made clear that a downward departure may be appropriate where the "fortuity of delay" results in a harsher sentence. *Id.* The First Circuit similarly recognized this possibility in *United States v. Saldana,* 109 F.3d 100 (1st Cir.1997). That case was brought by a defendant charged with illegal reentry who was interviewed by the INS while serving a state sentence but not federally indicted until after he had completed his state sentence. While the panel affirmed the district court's decision not to depart downwardly for the "lost opportunity" to serve a portion of his federal sentence concurrently with his state sentence, the court also recognized that in some situations a "careless or even an innocent delay" could produce "sentencing consequences so unusual and unfair that a

departure would be permissible." *Saldana,* 109 F.3d at 104.

The Second Circuit has yet to rule on the appropriateness of departing for a lost opportunity to serve concurrent sentences. In *Labeille–Soto,* the panel recognized that where the district court judge explicitly found (and I would agree) that a six month delay in the commencement of a federal prosecution did not take the case out of the heartland, the delay could not be grounds for a downward departure. *See* 163 F.3d at 101. *Labeille* suggests that in some cases, however, a downward departure for delay could be appropriate. *See id.; cf. United States v. Polanico–Ovalle,* 98–CR–766 (BSJ), 1999 WL 370638 (S.D.N.Y. June 7, 1999) (noting that district court has power to depart from the Guidelines for undue delay but exercising discretion to find that three year delay did not merit departure). In this case, the extended length of the delay, even absent any suggestion of bad faith on the part of the government, foreclosed the possibility that Medrano serve a portion of his federal sentence concurrently with his state sentence. This atypical factor creates a dramatic and unwarranted disparity in the magnitude of the sentence directed by the Sentencing Guidelines, justifying a downward departure. Having determined that a downward departure is warranted, I will hear argument at the sentencing proceeding as to how far the offense level should be reduced.[6]

SO ORDERED.

6. In letters dated September 10, November 3, and December 27, 1999, Medrano also contends that the Probation Department overstated his criminal history. The Probation Department found that Medrano's prior convictions result in 10 criminal history points. The Department further found that because Medrano is considered to have "committed"

the instant offense while he was in prison serving his state sentence, 2 points are added pursuant to U.S.S.G. § 4A1.1(d) and 1 point is added pursuant to § 4A1.1(e), for a total of 13 points and a corresponding criminal history category of VI. Medrano contends that he "committed" the instant offense before he was incarcerated. Because he reentered the

country illegally while on parole from an earlier state sentence, Medrano does not challenge the addition of 2 points pursuant to § 4A1.1(d). However, he contends that he should not be given an additional point under subsection (e). For the reasons described above, I find that the offense was not complete until Medrano was found by the INS in jail. Therefore, I concur with the Probation Department that Medrano receives an additional point under subsection (e) and that he thus has a criminal history category of VI.

Finally, Medrano asserts that additional circumstances take his case *outside the heartland* of the Guidelines. These contentions will be addressed on the record at the sentencing proceeding.